Patterson v. Booth.

---

PATTERSON v. BOOTH *et al.*, *Appellants*.

DIVISION ONE.

1. **Trustees:** PURCHASING PROPERTY WITH TRUST FUNDS. When a trustee purchases property with the trust funds and takes the title in his own name, a trust results for the benefit of the trust estate.

2. ———: ———. The trust funds may be followed into the property in which they have been invested, and the principle applies to cases where a guardian or curator has purchased property with the funds of his ward.

3. ———: ABUSE OF TRUST. Guardians and other trustees have no right to deal with the trust property for their own benefit.

4. ———: ———. Land purchased by a guardian with the funds of the ward is, in equity, the property of the latter.

5. **Purchaser of Land:** NOTICE. A purchaser of land is charged with constructive notice of everything contained or recited in the recorded deeds which lie in and constitute the chain of title under which he holds.

Patterson v. Booth.

6. **Mortgage:** ASSIGNMENT OF NOTE: EQUITIES. Where a mortgage is given to secure a negotiable note, the assignment of the note carries the security as an incident, and, if the note is transferred before maturity to a *bona fide* indorsee, such indorsee takes the benefit of the mortgage as well as of the note, free from the equities existing between the original parties.

7. ———: ———: PRIOR EQUITABLE TITLE. The foregoing principle, however, does not prevent the holder of an equitable title antedating the mortgage, from asserting such title, as against persons having actual or constructive notice thereof.

8. ———: ———: ———. Where the title of the mortgagor is impressed with a trust in favor of a third person, at the date of the mortgage, and the trust is disclosed by the recorded deeds in his chain of title, the mortgagee and his assignees are charged with constructive notice of the trust, and it is immaterial whether the note secured by the mortgage is negotiable or non-negotiable.

9. **Administrator and Curator:** FINAL SETTLEMENT: JUDGMENT. The judgment of the probate court upon the final settlement of an administrator or curator is conclusive upon all the parties to it, and is, as to all matters involved in the settlement, a bar to further proceedings concerning the same matter.

10. ———: ———: OMITTED ITEMS. Such final settlement is conclusive even as to items properly entering into his accounts and omitted by the executor or curator in making the settlement.

11. ———: ———. While matters which properly enter into the accounting at the final settlement of a guardian or administrator should be regarded as settled by the final adjudication of the probate court, yet matters which were only collaterally introduced, or which did not properly enter into the accounts, or over which the probate court had no jurisdiction, are not concluded by the final settlement.

*Appeal from St. Louis City Circuit Court.* — HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*Hitchcock, Madill & Finkelnburg* for appellants.

(1) The testimony as to the final and annual settlements of Horner as curator of plaintiff was inadmissible. It was *res inter alios acta.* 1 Wharton on

Neg., secs. 175–6, 760 ; 1 Phillips on Ev. [ 4 Amer. Ed.] p. 748. ( 2 ) The circuit court erred in its decree as to said final settlement. It was not competent for the circuit court, by the same decree, to declare that the final judgment of the probate court was and should remain in force, and yet deny its legal operation and effect. *State v. Evans*, 83 Mo. 322, and cas. cit.; *Johnson v. Beazley*, 65 Mo. 250 ; *Smith v. Sims*, 77 Mo. 269, 272–3 ; Freeman on Judgments, sec. 319*a ;* sec. 491, citing *Pratt v. Northam*, 5 Mason, 95 ; *Ferguson v. Carson*, 9 Mo. App. 497, 500 ; *Young v. Bircher*, 31 Mo. 136 ; *Dickerson v. Chrisman*, 28 Mo. 141 ; *Bauer v. Gray*, 18 Mo. App. 173 ; *French v. Stratton*, 79 Mo. 562–3. ( 3 ) On the pleadings and proofs plaintiff was not entitled to equitable relief, under established rules of equity. The circuit court erred in overruling defendant's motion to dismiss the bill on the pleadings and proofs, and in rendering the decree appealed from, and in overruling defendant's motions in arrest and for a new trial. 3 Pomeroy's Eq. Jur., sec. 1364, and cas. cit. in note 1 ; *State ex rel. v. Engelmann*, 86 Mo. 562–3 ; *Hotel Ass'n v. Parker*, 58 Mo. 329, and cas. cit.; *George v. Tutt*, 36 Mo. 142 ; *Reed v. Hansard*, 37 Mo. 199, 203 ; *Dobbs v. Ins. Co.*, 72 Mo. 191 ; *Carolus v. Koch*, 72 Mo. 647 ; *Landrum v. Bank*, 63 Mo. 48, 56–7 ; *Kelly v. Hurt*, 74 Mo. 561, 571–2 ; *Bobb v. Graham*, 89 Mo. 208 ; *Schradski v. Albright*, 93 Mo. 48 ; *Bresnehan v. Price*, 57 Mo. 423–4 ; *Damschroeder v. Thias*, 51 Mo. 100, 105 ; *Crim v. Handley*, 94 U. S. 653 ; *Bateman v. Willoe*, 1 Scho. and Lefr. 204 ; 2 Story's Eq. Jur., secs. 894–6, and cas. cit.; 1 Pomeroy's Eq. Jur., sec. 419, and cas. cit.; *Smith v. Clay*, 3 Bro. Ch. 635 ; 2 Pomeroy's Eq. Jur., sec. 607, and cas. cit.; *Barnard v. Campau*, 29 Mich. 162 ; 1 High on Injunctions, secs. 194, 210, 216, 222, 278. ( 4 ) The judgment of the probate court, approving Horner's final settlement and discharging him as curator, was rendered in open court by deliberate and express consent of

Patterson v. Booth.

plaintiff, fully advised and appearing by competent counsel, on January 10, 1887, although in December, 1885, plaintiff and said counsel were put on inquiry as to Horner's transactions, with actual notice of his legal title to the lots in question. Said judgment was entered under circumstances which, under established rules of law, were notice to plaintiff of Horner's deed of trust, on record since June, 1881, and of the falsehood of Horner's statements in December, 1885. *Mason v. Black*, 87 Mo. 341-2, citing *Mertins v. Jolliffe*, 1 Ambler, 311 ; *Rhodes v. Outcalt*, 48 Mo. 370 ; *Speck v. Riggin*, 40 Mo. 405 ; *Funkhouser v. Lay*, 78 Mo. 466 ; *Hughes v. Littrell*, 75 Mo. 573 ; 2 Pomeroy's Eq. Jur., sec. 608 ; 2 White & T. L. C. Eq. 123 ( 54* ), p. 159, citing *Price v. McDonald*, 1 Md. 403 ; *Hudson v. Warner*, 2 Har. & Gill, 415 ; Dart on Vendors, ch. 3, sec. 15, p. 786 ; *Peto v. Hammond*, 30 Beav. 495. ( 5 ) In April, 1887, plaintiff and his counsel became fully aware of Horner's deed of trust of June 25, 1881, and of the falsehood of Horner's statements in December, 1885. Under Revised Statutes, 1879, section 2616, plaintiff then still had three months within which he could, but did not, appeal from said final judgment and have said final settlement passed on *de novo* in the circuit court, whereby he could have obtained complete relief at law against Horner's administrator and the sureties on Horner's bond. This suit was not brought until September 9, 1887, eight months after final judgment was rendered by consent in the probate court, five months after actual knowledge of the fraud complained of, and two months after his remedy at law was barred by his own neglect. This was laches against which the plaintiff can have no relief in equity. R. S. 1879, sec. 2616 ; *Stockton v. Ransom*, 60 Mo. 538-9 ; *Reed v. Hansard*, 37 Mo. 202-3, citing *Matson v. Field,* 10 Mo. 100 ; *Hotel Ass'n v. Parker*, 58 Mo. 327, 329 ; *Carolus v. Koch*, 72 Mo. 647 ; Freeman on Judgments, secs. 502-3, 506 ; *Mastick v. Thorp*, 29 Cala. 444 ; 3 Pomeroy's Eq. Jur., sec. 1361, and cas.

cit., sec. 1364, note 1 ; 2 Story's Eq. Jur., sec. 895*a;* *Hendrickson v. Hinckley*, 17 How. 443, 445 ; *Earl of* *Oxford's Case*, 2 Wh. & T. L. C. Eq. 1329–30, 1335, 1356–8, 1372, 1376, 1380–1 ; 1 High on Injunctions, secs. 194, 216–17, 221–2. ( 6 ) Equity will not enforce such trust in favor of plaintiff, as against the equal or superior equity of any intermediate incumbrancer ; *a fortiori* after deliberate acts amounting to a release or confirmation by plaintiff, when he was aware, or ought and might with reasonable diligence have become aware, that such incumbrance existed, but neglected his remedy at law. 2 Pomeroy's Eq. Jur., secs. 964–5, and cas. cit.; 1 Perry on Trusts, secs. 218, 228 ; 1 Story's Eq. Jur., secs. 409–11 ; *Ranken v. Patton*, 65 Mo. 416, and above authorities. ( 7 ) Defendants were holders in good faith for value before maturity of Horner's $2,500 note, having purchased it in the ordinary course of business as a " transient security," extended, reissued and again made negotiable by the maker. The mortgage security was merely an incident to the debt, passing by assignment of the note alone, and it was the nature of the debt, not the mortgage, which determined the rights, remedies and equities of the parties thereto. *Mason v. Bank*, 16 Mo. App. 281 ; *Light v. Kingsbury*, 50 Mo. 333 ; *Beeler v. Frost*, 70 Mo. 186 ; 2 Daniels' Neg. Inst., sec. 1241 ; *Watson v. Hawkins*, 60 Mo. 550, 554 ; *Mitchell v. Ladew*, 36 Mo. 526, 533 ; *Logan v. Smith*, 62 Mo. 455 ; *Goodfellow v. Stilwell*, 73 Mo. 17 ; *Joerdens v. Schrimpf*, 77 Mo. 385 ; *Lee v. Clark*, 89 Mo. 558. ( 8 ) In such case the rule as to what will constitute notice to such purchaser of prior equities is to be determined by the law merchant, not by the law applicable to estates in land. That rule is, that nothing short of bad faith on the part of the purchaser will defeat his title ; suspicious circumstances or even gross negligence on his part will not have that effect. *Mays v. Robinson*, 93 Mo. 114, 122–3 ; *Hagerman v. Sutton*, 91 Mo. 519, 531–2 ; *Hamilton v. Marks*, 63 Mo. 167, 173, 177–8 ;

*Edwards v. Thomas*, 66 Mo. 483 ; *Johnson v. McMurray*, 72 Mo. 282 ; 1 Daniels' Neg. Inst., sec. 803 ; *Mason v. Bank*, 16 Mo. App. 281–2 ; *Goodman v. Simonds*, 20 How. 366. ( 9 ) Under the circumstances the defendants obtained a perfect title to the note and the mortgage security incident thereto, free from any prior outstanding equity whatever. Their equity was not only equal but superior to plaintiff's. *Crawford v. Spencer*, 92 Mo. 509 ; *Deere v. Marsden*, 88 Mo. 514 ; *Smith v. Worman*, 19 Ohio St. 148 ; 1 Daniels' Neg Inst., sec. 829 ; *Saffron v. Rayner*, L. R. 14 Ch. Div. 406 ; 2 Pomeroy's Eq. Jur., sec. 666, note 7 ; 668, note 3 ; 670–2. ( 10 ). On the facts proved, defendants ( appellants ) are not chargeable with constructive notice of any right or equity in plaintiff, even under the rules applicable to interests in land, as distinguished from the rule relating to negotiable paper. No actual notice to them was alleged or proved. *Hagerman v. Sutton*, 91 Mo. 531–2 ; *Drey v. Doyle*, 99 Mo. 467 ; *Mason v. Black*, 87 Mo. 342 ; *Rhodes v. Outcalt*, 48 Mo. 370, citing *Williamson v. Brown*, 15 N. Y. 354, 359 ; *Roan v. Winn*, 93 Mo. 511 ; *Kitchen v. Railroad*, 69 Mo. 265 ; *Leavitt v. LaForce*, 71 Mo. 356 ; *Cornet v. Bertelsmann*, 61 Mo. 126 ; *Goodman v. Simonds*, 20 How. 366 ; 2 Pomeroy's Eq. Jur., secs. 606–7.

*Alexander Martin* and *John P. Ellis* for respondent

( 1 ) The land described in the petition and included in the deed of trust was held by Horner wholly in trust for plaintiff. Bispham's Prin. Eq., sec. 86 ; *Phillips v. Overfield*, 100 Mo. 466 ; Pom. Eq. Jur., sec. 951 ; *Martin v. Wyncoop*, 12 Ind. 266 ; *Bank v. Torry*, 7 Hill. 260 ; *Thornton v. Irwin*, 43 Mo. 153 ; *Harper v. Mansfield*, 58 Mo. 17 ; *Mitchell v. McMullen*, 59 Mo. 252 ; *Clarke v. Drake*, 63 Mo. 354 ; *Roberts v. Mosely*,

64 Mo. 507 ; *Shaw v. Shaw*, 86 Mo. 594. ( 2 ) The execution of the deed of trust now held by appellants was a breach of trust. *Beal v. Harmon*, 38 Mo. 435; *Strauss v. Drennan*, 41 Mo. 289 ; *Richardson v. Richardson*, 49 Mo. 29 ; *Thomas v. Pullis*, 56 Mo. 211. ( 3 ) The holder of the note and the deed of trust in controversy had notice of the trust and breach of it by the curator. They had constructive notice of the facts which constituted the trusts. ( 4 ) In applying these principles to conveyances, it is universally held that every purchaser is burdened with constructive and conclusive notice of everything contained or recited in the deeds constituting the chain of title under which he holds. 2 Spencer Eq. Jur., secs. 622, 626, 629, 630 ; 2 Lead. Cas. Eq. 160; *Scott v. McCullock*, 13 Mo. 13 ; *Durette v. Briggs*, 47 Mo. 356 ; *Orrick v. Durham*, 79 Mo. 174 ; *Tydings v. Pitcher*, 82 Mo. 379 ; *Morris v. Hoyle*, 37 Ill. 155 ; *Rall v. Rea*, 12 Atl. Rep. ( N. J. ) 505 ; *Association v. Erb*, 8 Atl. Rep. ( Pa.) 62 ; *Huber v. Bossart*, 70 Iowa, 718. ( 5 ) The facts recited and appearing in the deeds forming appellants' chain of title constituted Horner trustee for his ward at the sale, irrespective of whence moved the consideration. A fiduciary holding the secured paper of his ward on real estate, and moving the sale, could not become a purchaser for himself. He could take the title only for his ward. Pomeroy's Eq. Jur., sec. 958 : *Martin v. Wyncoop*, 12 Ind. 266 ; *Thornton v. Irwin*, 43 Mo. 153 ; *Harper v. Mansfield*, 58 Mo. 17 ; *Mitchell v. McMullen*, 59 Mo. 252 ; *Clarke v. Drake*, 63 Mo. 354 ; *Roberts v. Mosely*, 64 Mo. 507 ; *Shaw v. Shaw*, 86 Mo. 594 ; *Thorpe v. McMullen*, 1 Gilman, 614 ; *Rice v. Morris*, 5 McLean, 4. ( 6 ) Actual or constructive notice of a trust to an agent while acting in behalf of his principal is conclusive constructive notice to the principal. Pomeroy's Eq., secs. 666, 667, 671 ; *Myers v. Ross*, 3 Head, 59 ; *Willis v. Greenhill*, 4 De G. F. & J. 147 ; Bispham's Eq. Jur., sec. 268. ( 7 ) In this state the

relation of a trustee in a deed of trust to his beneficiary is treated the same as the relation of an agent to his principal. *Chesley v. Chesley*, 49 Mo. 540. (8) It is said that he is the agent of both parties. *Sherwood v. Saxton*, 63 Mo. 78; *Graham v. King*, 50 Mo. 22; *Tatum v. Holliday*, 59 Mo. 422; *Hotel v. Schraeder*, 62 Mo. 147. He holds a power coupled with an interest. After default he can execute it regardless of the situation or status of the grantor. 56 Ill. 179; *De Jarnett v. De Giverville*, 56 Mo. 440; *Black v. Gregg*, 58 Mo. 565. (9) "It is a maxim of universal recognition in equity jurisprudence, that he, who takes with notice of an equity, takes subject to that equity. Notice in this connection does not mean positive information brought directly home to the party sought to be charged therewith and affected thereby; but any fact that would put an ordinarily prudent man upon inquiry is notice." *Major v. Buckley*, 51 Mo. 227; *Sensenderfer v. Kemp*, 83 Mo. 581; *Horne v. Frangen*, 73 Iowa, 25; *Smith v. Orton*, 131 U. S. App. [1 Law. Ed] 75, 92. (10) The negotiability of a note cannot affect or change the status of the security. *Linville v. Savage*, 58 Mo. 248; *Logan v. Smith*, 62 Mo. 455; *Orrick v. Durham*, 79 Mo. 170. (11) Appellants have no equity as against the plaintiff for a return of the money advanced on the deed of trust. *Valle v. Fleming's Heirs*, 29 Mo. 152; *Schroyer v. Nickel*, 55 Mo. 264; *Schafer v. Causey*, 76 Mo. 365; *Henry v. McKerlie*, 78 Mo. 416. (12) The court did not err in its action relating to the judgment of discharge entered on final settlement in the probate court. (13) The plea of laches is not well taken

BLACK, J.—This is a suit brought by Patterson against Booth and Barada, the administrator of Horner, Lancaster, and the State Savings Association to set aside a deed of trust executed by Horner to Lancaster to secure the payment of $2,500, and for other relief.

The facts are these: On the twenty-third of December, 1874, W. H. Horner was duly appointed curator of the estate of the plaintiff, Charles L. Patterson, a minor. Horner as such curator received from J. B. Johnson, who was the former guardian of the minor, notes, stock and cash amounting to something over $24,000. As part of these assets there were two notes executed by Phœbe Hunt, one dated the twenty-seventh of January, 1871, for $5,000, and the other dated the twenty-sixth of October, 1874, for $6,383.34. These two notes were secured by two deeds of trust, the first upon block 10 and the second upon said block 10 and also upon block 9 in the same addition. These notes and the interest notes were all payable "to J. B. Johnson, guardian of Charles L. Patterson, a minor," and were so designated and described in the deeds of trust.

On account of the inability or refusal of the trustee in the deed of trust dated the twenty-seventh of January, 1871, to act, Horner applied to the circuit court and procured an order appointing Lancaster trustee therein. This order was made on the twentieth of May, 1881. On the seventeenth of June, 1881, Horner procured an order of the probate court allowing him to purchase the property described in both deeds of trust for and in behalf of his ward.

The property was sold under both deeds of trust on the twentieth of June, 1881, and Horner became the purchaser for the consideration of $2,500. The deed to Horner, executed by Lancaster, the substituted trustee in the first deed of trust, contains a full copy of the order appointing Lancaster trustee, and shows that the order was made at the instance of Horner as curator of Patterson and that Horner held the principal and unpaid interest notes as such curator. Lucas was the trustee in the other deed of trust and the deed made by him to Horner does not, on its face, show that Horner

held the principal and interest notes described in that deed of trust, but it does show that the notes were payable to Johnson, curator of Charles Patterson.

The foregoing deeds were all duly recorded, and thereafter and on the twenty-fifth of June, 1881, Horner made a deed conveying both blocks to Lancaster, trustee, to secure a principal note for $2,500 due in one year and two interest notes all payable to the State Savings Association, a banking institution. Lancaster and his partner, Tiernan, negotiated this loan for Horner, and in doing this they presented to the bank a certificate from an abstract office in good standing, stating that the fee-simple title to the property was fully vested in Horner, and that the property was unincumbered except taxes for 1881. The bank made the loan relying upon this certificate. The bank assigned the note to the Western Building and Loan Association and that association assigned it to the defendants, Booth and Barada. These assignees took the note relying upon the abstracter's certificate. Horner paid the interest, and the note was extended from time to time, and on the twenty-fifth of October, 1885, it was extended. by Booth and Barada, at the request of Horner, for a period of three years from that date. It is this deed of trust which the plaintiff seeks to set aside.

Horner, as before stated, purchased the property on the twentieth of June, 1881, and executed the deed of trust to the bank on the twenty-fifth of the same month. In June, 1882, he executed and recorded a quitclaim deed conveying the property to his ward, Charles L. Patterson. Patterson was then a non-resident minor, and had no knowledge of this deed until 1885, when he and Horner had and made a settlement as hereafter stated. In a settlement filed by Horner in the probate court July, 1882, he made report that he had purchased the property for and had conveyed it to his ward. In December, 1885, Patterson, being then of age, had a settlement with Horner, and at that time the latter

delivered to Patterson the recorded quitclaim deed, stating to Patterson's attorney that the property was unincumbered. Horner, as curator, filed his final settlement in the probate court in July, 1886, showing a full and complete settlement of the estate, but nothing was done in respect of the settlement until after his death. His administrator, Mr. Tittman, and the attorney of Patterson appeared in the probate court in October of that year, and the settlement was then duly approved by the order and judgment of that court.

It appears Patterson, who was still a non-resident, did not know that Horner had incumbered the property with the $2,500 deed of trust until April, 1887, and in the following September he commenced this suit.

Mr. Tittman, the administrator of the Horner estate, testified that, at the request of Mr. Martin who represented Patterson, he examined the papers belonging to the estate and found an envelope indorsed "Important memo. inside as to Charles L. Patterson and deed of trust $2,500." Inside the envelope were two papers with a memorandum on each written and signed by Horner, and in which he says the note "should be paid by me" and "this note I should pay." In case of death he directs notice be given to Patterson or his attorney "so that it can be paid off  *  *  *  as I should pay this and not Charles L. Patterson, formerly my ward, who became of age this year." These memoranda bear date December 30, 1885, and were found after the institution of this suit.

On the foregoing and some other evidence to be hereafter noticed the circuit court set aside the curator's final settlement made by the administrator "so far as the same constitutes in law or equity a bar against or a discharge or release of any right of action in favor of the plaintiff and against defendants on account of the wrongful act of said Horner in executing said deed of trust." By this decree the court also set aside and annulled the deed of trust made by Horner to the

defendant bank.  The defendants, Booth and Barada, appealed.

1.  It is a well-settled principle of law that, when a trustee purchases property with the trust funds and takes the title in his own name, a trust results for the benefit of the trust estate.  The funds may be followed into the property in which they have been invested.  And the principle applies to cases where a guardian or curator has purchased property with the funds of his ward.  *Phillips v. Overfield*, 100 Mo. 466; Bispham's Prin. of Eq., sec. 86; *Harney v. Donohoe*, 97 Mo. 141; *Mabary v. Dollarhide*, 98 Mo. 198.

There is still another principle of law applicable to this case.  Guardians and other trustees have no right to deal with the trust property for their own benefit.  All such transactions, though not always void, are voidable at the option of the beneficiary.  The law forbids a trustee or other person who occupies a fiduciary position from dealing with the trust property for his own gain.  He must act for and not antagonistic to the beneficiary.  *Thornton v. Irwin*, 43 Mo. 153; *Shaw v. Shaw*, 86 Mo. 594; *Ward v. Davidson*, 89 Mo. 458; Bispham, Prin. Eq., sec. 92.

That Horner purchased the property at the trustee's sale with the funds of his ward cannot be doubted; for he simply credited the amount bid on the notes held by him as curator.  Again, it was in his capacity as curator that he directed the trustees to sell.  He could not purchase at those sales for himself or for any person other than his ward.  Indeed, he purchased the property for his ward and not for himself, and this is shown by a series of conclusive circumstances before mentioned.  There can be no doubt that the property was clothed with a trust, and in equity belonged to the ward from the moment it was purchased by the guardian.  It was then and from that time has been the ward's property.

2. The next and most important question is, whether the bank and these defendants, Booth and Barada, took the deed of trust with the notice that Horner held the property in trust for Patterson, who was a minor. Horner, as before said, purchased the property on the twentieth of June, 1881, and he made the deed of trust to the bank on the twenty-fifth of the same month. In determining whether the bank had notice we must lay out of view those circumstances which transpired after the date of that transaction. Horner's report to the probate court that he had purchased the property for the ward, the quitclaim deed to the ward, and the memoranda found after his death among his papers are facts which will not be considered in disposing of this question of notice. The evidence of Mr. Parsons, the president of the bank, who made the transactions with Horner's agents, Lancaster and Tiernan, is clear and explicit and without contradiction. It shows that he made the discount on the faith of the abstracter's certificate produced by Lancaster and Tiernan, and it shows that he had no actual knowledge of the breach of trust on the part of Horner in making the deed of trust.

Indeed, it may be said that neither the bank nor any of the assignees of the note had any actual knowledge or notice that Horner had purchased the property with funds of his ward or whilst dealing with his ward's property. The notice, if any, is that imparted by the recorded deeds.

It is a familiar principle of law that a purchaser is charged with constructive notice of everything contained or recited in the recorded deeds which lie in and constitute the chain of title under which he holds. This principle of law must be applied in order to give due effect to the policy of the statute concerning the registration of deeds and is asserted by many authorities. *Orrick v. Durham*, 79 Mo. 178; *Tydings v. Pitcher*, 82 Mo. 379. Speaking of notice arising from a recorded

deed, Mr. Pomeroy says: "Such record becomes a constructive notice, not only of the fact that the instrument exists, but of its contents, and of all the estates, rights, titles and interests, legal and equitable, created or conferred by it or arising from its provisions." 2 Pomeroy Eq. Jur., sec. 655. The subsequent purchaser must be taken to have had all the knowledge which is conveyed by the language of the recorded deed. *Bancroft v. Consen*, 13 Allen, 50. There the deed was made to Charley Hersey, and was expressed to be "in consideration of $125 paid by Charley Hersey, of Worcester, guardian of the minor children of Edward Hart," etc., and this recital was held sufficient to give notice that the land was held in trust for the minor children. See, also, *Blaisdell v. Stevens*, 16 Vt. 179.

Now the two deeds of trust both recited the fact that the notes thereby secured, and amounting to about $12,000, were all payable to Johnson as curator of Patterson. The deed to Horner, executed by Lancaster under the powers contained in the first of the deeds of trust, showed that Horner was the curator of the minor's estate, and as such curator caused the sale to be made, and that he also became the purchaser. These facts show that Horner, in purchasing, was dealing with his ward's property, and, as we have seen, that is sufficient to impress the property with a trust in favor of the minor. The bank and the subsequent assignees of the Horner note must be held to have had constructive notice of the trust. We do not overlook the fact that the trustees' deed executed by Lancaster conveyed block 10 only. The other trustee's deed conveyed block 10 as well as block 9. The defendants claim under both trustee's deeds and must be held to have had all the information contained in both of them.

3. But the defendants insist that the questions of notice to the assignees of the note must be governed by the law merchant, and that by the rule of the law merchant nothing short of bad faith will defeat the title of

the assignees of the note to the mortgage security, and in support of this proposition we are cited to *Hagerman v. Sutton*, 91 Mo. 519 ; *Mayes v. Robinson*, 93 Mo. 114, and other authorities. The principle of these cases is, that if a mortgage is given to secure a negotiable note the assignment of the note carries the security as an incident, and, if the note is transferred before maturity to a *bona fide* indorsee, such indorsee takes the benefit of the mortgage as well as of the note, free from equities between the original parties. The doctrine thus stated is now the settled law of this state ; but in applying it other principles of law are not to be overlooked.

In the first place the plaintiff was not a party to the note or mortgage, nor was Horner a party thereto in his capacity of curator. The note and mortgage were both the individual contracts of Horner. The question here is not one where a maker of a negotiable note seeks to interpose a defense against the assignee of the note and mortgage. The plaintiff's equitable title to the land is prior to the mortgage and he should prevail as against all persons having actual or constructive notice of his equitable title. Had Horner executed and recorded the quitclaim deed to his ward before he made the deed of trust, could it then be said that the bank or any assignee of the note would hold the security as against the ward ? Certainly not. Again, had the bank whilst the holder and owner of the note released the land from the lien of the deed of trust by matter of record and then assigned the note before maturity, it could not be contended that the assignee would take the mortgage. A mortgagee of real estate and his assignees of the secured debt stand in no better position than a purchaser of the land and his assignees.

The doctrine of constructive notice imparted by a recorded instrument applies alike to deeds and to mortgages. The assignee of the mortgage takes it subject to all prior liens and mortgages, which are duly recorded, because he has constructive notice of them. *Logan v.*

*Smith,* 62 Mo. 455; 1 Daniel on Neg. Inst. [ 2 Ed. ] sec. 834 b ; Tiedeman on Com. Paper, sec. 305. If the title of the mortgagor is impressed with a trust in favor of a third person at the date of the mortgage and this trust is disclosed by the recorded title, as it was in the case in hand, it can make no difference whether the note secured by the mortgage is negotiable or non-negotiable. In such case every assignee, as well as the mortgagee, is charged with constructive notice of the trust and must yield to the trust.

4. The defendants, Booth and Barada, insist: *First,* that the judgment of the probate court approving the curator's final settlement is a conclusive adjudication that the curator had fully settled and accounted for all money and property due his ward, and constitutes a bar to this action until set aside ; *second,* that such relief will not be awarded by a court of equity on any ground of which the plaintiff could have, with due diligence, availed himself in the proceedings at law, and that the plaintiff here has been wanting in due diligence ; *third,* that, if wrong in the last proposition, the court should have set aside the probate judgment as a whole and thus opened up the estate for final settlement.

There is certainly much solid ground upon which to base the second of the above propositions ; for the plaintiff had from December, 1885, when the settlement was made with the curator and accounts disclosed, until October, 1886, when the judgment of approval was entered by consent, to investigate the accounts ; but in the view we take of this case it will be necessary to consider only the first of the foregoing propositions.

There can be no doubt but the judgment of the probate court was a final one, and that it is as conclusive as the final judgment of any other court. A probate judgment upon the final settlement of an executor, administrator or curator is conclusive upon all parties to it, and,

as to all matters involved in the settlement, the judgment constitutes a bar to further proceedings concerning the same matter. 9 Mo. 362 ; 23 Mo. 95 ; 48 Mo. 308 ; 60 Mo. 246 ; 62 Mo. 417 ; 70 Mo. 603. That the plaintiff was a party to the judgment in question, cannot be doubted. The question then is, whether the present controversy was within the scope and purpose of that settlement.

The case of *State, etc., v. Roland*, 23 Mo. 95, was a suit on a guardian's bond. The guardian had made a final settlement charging himself with rents received. The plaintiff sought to show that the guardian leased some of the improvements and occupied a dwelling-house; that the rents accounted for no more than equaled the rents received, and that the guardian had neglected to charge himself with the use of the dwelling-house ; but it was held the final settlement concluded such investigation. *Fish v. Lightner*, 44 Mo. 268, presents a case where the matter in question was held not to be concluded by a final settlement made in the probate court. Fish and Lightner were partners, and, it seems, Lightner purchased and paid for the stock and also the property in which the business was carried on. By the partnership agreement Fish was to have one-half of the stock and real estate when he paid Lightner one-half of the purchase price of the same. Lightner died and Fish administered upon the firm assets and made and had approved a final settlement showing a balance due him of $1,058. The final settlement did not show any statement of profit and loss. Fish then brought suit for specific performance, and relied upon his final settlement as conclusive proof that he had paid one-half of the purchase price of the land ; but it was held the settlement was conclusive only for the purposes for which it was made ; that the question whether he had made the payment was an individual, and not a partnership, matter.

Some of the cases which we have examined seemed to indicate that if an executor or administrator omits any item properly entering into his accounts, then the final settlement is not conclusive as to such item ; but such is not the law in this state. *State, etc., v. Roland,* *supra.* When the administrator or guardian files his final settlement and gives due notice, the opposing parties may appear and show that the accountant has not charged himself with all the assets belonging to the estate, and may dispute the correctness of the credits. Matters which properly enter into this accounting should be regarded as settled by the final adjudication of the probate court ; but it is equally clear that matters which are only collaterally introduced, and matters not properly entering into the accounts, and also matters over which the probate court has no jurisdiction, are not concluded by the final settlement.

Now, in this case, the $2,500 note and the deed of trust executed by Horner to secure the same were, in point of fact, not mentioned in any of the annual or in the final settlement. Besides this, that note was not an asset belonging to the estate, nor was it a debt owing by the estate. The note and deed of trust were both the individual contracts of Horner. The deed of trust was not a matter to be considered in the final settlement, unless the ward's land was, in some way, charged with the payment of it. If we are right in what has been said, the bank, and all assignees of the note, took the deed of trust subject to the plaintiff's equity, and the plaintiff had a right to disregard the deed of trust in the final settlement filed in the probate court. He had the right to set that deed of trust aside by proceedings in the proper forum. The probate court could not award him that relief for these reasons : In the first place, the assignees and holders of the note were, in no sense, parties to the final settlement in the probate court and would not have been bound by any judgment entered by that court. In the next place the probate

court was without jurisdiction to grant the equitable relief to which the plaintiff was, and is, entitled. It is, therefore, clear that the judgment of the probate court on the final settlement constitutes no impediment, whatever, in the way of setting aside this deed of trust made by Horner.

It also follows, from what has been said, that the circuit court erred in modifying the judgment of the probate court rendered on the final settlement; but we do not see how that error can be made a ground for reversal of the decree. Notwithstanding the error, the plaintiff is entitled to the decree setting aside the deed of trust as against Booth and Barada. The administrator of the Horner estate is the only party having any right to complain of the decree so far as it modifies the probate judgment upon the final settlement, and he did not appeal, and makes no complaint.

The plaintiff's equitable title to this land is prior and paramount to the defendant's mortgage, for Horner had nothing but the legal shell, and, as defendants took the mortgage with constructive notice of the facts which raise and create the plaintiff's equitable title, the plaintiff should prevail, and the decree is affirmed. All concur, except BRACE, J., who is absent.