KEET & ROUNTREE DRY GOODS COMPANY et al., Appellants,
v. W. W. GIDEON et al., Respondents.

### St. Louis Court of Appeals, May 23, 1899.

**Trustee's Sale**: PURCHASER'S SALE TO TRUSTEE: KNOWLEDGE. In the
case at bar the trustee did not buy at his own sale, and he did
not know of the intention of his vendors to purchase at the trust
sale until the property had been struck off to their agent as the high-
est and best bidder; held, that without such knowledge or any par-
ticipancy in that purchase, the trustee was in no wise [disabled to
buy the property which in the hands of its new owners was entirely
freed from its trust character.

*Appeal from the Greene Circuit Court.*—HON. JAMES T.
NEVILLE, Judge.

AFFIRMED.

KOREE & FARRINGTON with WHITE & MCCAMMON for
appellant.

The principle that the trustee and persons standing in
a fiduciary capacity to such trustee are forbidden to buy at
the trustee's sale, and if they do so buy, they become trustees,
if the beneficiary elect to make them, has been decided numer-
ous times, not only in this country but in England, and is
universally declared to be the law in all text books bearing on
the subject. We call the court's special attention to the fol-
lowing citations, viz: Gardner v. Ogden, 22 N. Y. 327;
Border v. Conklin, 53 Pac. Rep. 699; Thornton v. Irvin, 43
Mo. 153; Story's Eq. Jur., sec. 322. The Gardner v. Ogden
case, *supra,* is very full on this subject, setting out many Eng-
lish decisions and is to the point, holding that a mere clerk of
the trustee coupled with no other fact, will preclude him from
purchasing property which his employer has for sale. "The

doctrine that trustees, agents, administrators, guardians, attorneys or others, whose connection with any other person is such as to establish a confidential relation between them concerning his property or give them special knowledge and opportunities in regard to it can not without, and often can not with, his full knowledge and consent become the purchaser of such property, is well settled in the jurisprudence in England and the United States." And he goes on referring to the leading cases to which we call your attention in our brief. The same doctrine has been referred to and upheld in State v. McKay, 43 Mo. 603; Grumley v. Webb, 44 Mo. 450, 451; Patterson v. Booth, 103 Mo. 413. The facts in the case at bar are much stronger and bring T. J. Gideon more clearly within the rule than any other case we have been able to find. He did commit constructive fraud, and he must be held to account as a constructive trustee to these plaintiffs for the profits which he made.

WATSON & GIDEON for respondents.

While cases in equity are substantially triable *de novo* at the same time the appellate courts will greatly defer to the conclusions of fact reached by the trial court, and if supported by a preponderance of the evidence they must be upheld. Griesedieck v. Griesedieck, 56 Mo. App. 94; Blount v. Spratt, 113 Mo. 48; Johnson v. Duer, 115 Mo. 366; Barlow v. Elliott, 56 Mo. App. 374. And where there is any evidence to support such finding the appellate court will defer to it, the evidence in this case was overwhelming in respondent's favor. McLemore v. McNeley, 56 Mo. App. 556. On the credibility of witnesses and the weight of evidence, the appellate courts will defer to the finding of the trial judge and will not reverse the findings of fact by the judge who has had the advantage of seeing and knowing the witnesses, hearing them testify, and observing their demeanor, unless the preponderance of the evidence is against his findings, and that deference in doubtful cases will

turn the scale. The pleadings and evidence show that plaintiffs have no cause and the highest preponderance prevails in this case to sustain the trial judge's findings—the evidence is undisputed and was only a question of credibility with the trial judge. Drosten v. Mueller, 103 Mo. 624; Rawlins v. Rawlins, 102 Mo. 563. The contention of appellants is because T. J. Gideon was president of the Gideon Mercantile Company and was also a director and shareholder in the corporation, and drew the deed of trust under which he bought at public sale, constituted him the attorney of trustee. The resolution of the board of directors of the corporation authorized and directed him to draw the deed of trust as president of the corporation and in drawing said deed of trust he acted in his official capacity as such and for himself as creditor by way of indorser for the corporation on some of its paper, and in no sense as the attorney for the corporation or trustee, but acted in obedience to direction of the board of directors of the corporation the evidence conclusively shows this. The relation of attorney did not in fact exist, there was no agreement that 'T. J. Gideon would be the trustee's attorney, or that the trustee would have him as his attorney, which facts are necessary to establish this relation. West v. Freeman, 69 Mo. App. 682; State v. Hedgepeth, 125 Mo. loc. cit. 21.

BIGGS, J.—The plaintiffs are creditors of the W. W. Gideon Mercantile Company, a trading corporation. On September 1, 1897, the latter conveyed its stock in trade and assets to W. W. Gideon as trustee for the benefit of plaintiffs and other of its creditors. Out of the proceeds of the administration of said stock sixty-eight per cent of the face value of plaintiffs' demands were paid. The trustee closed out the remainder of the assigned estate at public auction for $1,025, George W. Logan being the purchaser as agent of Thomas J. Gideon and F. M. Gideon. The latter owners sold the property to W. W. Gideon for about $1,800, and he conveyed it

to third parties for $2,400, $2,200 of which was secured by mortgage, and $200 evidenced by the personal note of the vendees. This action is based on the theory that plaintiffs are entitled to hold the Gideons as trustees of the property which they acquired after its sale at public auction, on the ground that one was the trustee for creditors, and the other was his attorney, and it seeks to compel them to account for the profits realized when they sold the property to other persons. The trial court rendered a decree dismissing the bill, from which plaintiffs appealed.

This record contains no evidence of actual fraud on the part of the trustees in selling the effects in his hands. The deed to him made it his duty, first, to sell the stock of goods by retail, as is done in the regular course of mercantile business, and thereafter to dispose of whatever odds and ends and unpaid accounts might remain after a specified time at public auction upon due notice and advertisement. The record shows that he performed his duties under the chattel deed of trust to him as therein prescribed, and ultimately sold the remainder of the stock at public auction upon due notice and advertisement in the presence of the representatives of plaintiffs, who were also among the bidders at such sale, to the highest bidder at such sale, and it does not show any omission of duty on his part as trustee, either in retailing the goods or in disposing of the residue at auction. It further appears that the agent of the president of the insolvent corporation and one of his brothers, both of whom were sureties on its obligations, purchased the goods on their own behalf at the auction sale and that these two purchasers subsequently sold the goods to the trustee W. W. Gideon, and he conveyed them to other persons.

The pith of the argument of the learned counsel for appellant is that the office of W. W. Gideon as trustee avoided the sale to him as that of attorney avoided the sale of T. J. Gideon. The law governing the dealings of persons acting

in a fiduciary capacity is well settled in this state. Such persons are not permitted to speculate to their own advantage in the trust estate committed to their care. And any transaction between themselves and their beneficiaries are carefully and jealously scrutinized in equity and will be set aside at the instance of the *cestuis que trust* in all cases where the fiduciary fails to show perfect fairness and good faith on his part. Patterson v. Booth, 103 Mo. 413, and cases cited in State ex rel. Jones v. Jones, 53 Mo. App. loc. cit. 218. In the case at bar the trustee, W. W. Gideon, did not buy at his own sale. And the uncontradicted evidence is that he did not know of the intention of his vendors, T. J. and F. M. Gideon, to purchase at the trust sale until the property had been struck off to their agent as the highest and best bidder. Without such knowledge or any participancy in that purchase, he (W. W. Gideon) was in no wise disabled to buy the property KNOWLEDGE. which in the hands of its new owners was entirely freed from its trust character. He had the same unrestricted right to deal with them which one man acting for himself has to contract with other persons as to their own property. We think it clear under the undisputed evidence adduced by the defendants that the connection of the trustee as *mesne* purchaser of the goods after their sale at auction was not such as to make him responsible to these plaintiffs for the difference between what he paid for the property and that which he received from his vendees.

Neither are we able to find anything in this record tending to show that T. J. Gideon, one of the joint purchasers of the goods at the auction sale was incapacitated to buy by reason of being attorney for the trustee. In the first place, both he and the trustee deny that any such relationship existed. He is an attorney and he was president of the corporation and a surety for it. As president he prepared the chattel mortgage and in his own interest assisted in the calculation of dividends

and delivered some of the checks of trustee for dividends to the parties entitled; but there is no evidence that he ever charged or was paid anything for any of these services. His interest and assistance in the matter may be justly regarded as a dictate of prudence arising from his liability for some of the indebtedness of the corporation and consequent desire to make the most out of the trust property and thus diminish his own loss. There is no evidence that he acquired any particular knowledge of the value of the property which was auctioned off, beyond that which was had by the representatives of the creditors and other persons attending the sale. The proof is that the property was inventoried before its sale, and it is not claimed that the amount of the inventory or the character of the goods was concealed from any one. The sale itself was in strict accordance with the chattel deed of trust, and was not in any way had for the personal advantage of the former president of the corporation. Moreover his instructions to his purchasing agent forbade a bid beyond a fixed price. In short there is no evidence of his complicity in any transaction injurious to the interests of the beneficiaries under the deed of trust. On the contrary the undisputed evidence shows that both he and his joint purchaser acted with the utmost good faith, candor and fairness. Such was the conclusion reached by the learned trial judge, and his decree dismissing the bill will be affirmed. All concur.

### OPINION ON MOTION FOR REHEARING.

The undisputed evidence is that during the evening of the day on which the goods were sold negotiations were begun between T. J. Gideon, one of the purchasers at the sale, and W. W. Gideon, the trustee, for a release of the goods to the latter. Within forty-eight hours after the sale the goods were resold to W. W. Gideon at an alleged profit to T. J. and F. M. Gideon, the purchasers, of $600. It is claimed by counsel

for appellants that a conclusive presumption attaches to these circumstances that the two transactions constituted but one, that is a sale of the goods by the trustee to himself. In support of this the case of Abbot v. American Rubber Co., 33 Barb. 578, is cited. The reasoning of the court in that case is quite persuasive, and were the question a new one in this state we would be inclined to follow it. It is there argued that where the trustee repurchases the goods within a short time after their sale by him (in that case within two days), and the possession of the property was not changed, the presumption must be that the first sale was for the benefit of the trustee, and that he ought not be permitted to allege and prove to the contrary, for the reason that the presumption is not deducible from the evidence but attaches itself to the circumstances when proved. Thus in a case of homicide a conclusive presumption of an intent to kill arises from the use of a deadly weapon. However a different rule has been declared in this state in Boehlert v. McBride, 48 Mo. 505. It is there held that when the trust property is sold back to the trustee within a short time after a sale by him, in order to fix upon him the charge of having speculated at the sale or violated his duty as trustee, there should be some proof that there was an understanding between him and the bidder at or prior to the sale. In the case here the circuit court was justified in deciding this question against the appellants. Aside from the circumstances all of the proof is to the effect that the purchase by W. W. Gideon was an afterthought. The motion for rehearing will be overruled. All concur.