PAULINE FARRELL et al., Respondents, v. GEORGE W. FARRELL, Appellant.

#### St. Louis Court of Appeals, January 21, 1902.

1. **Trustee: CESTUI QUI TRUST: EVIDENCE: PRACTICE, TRIAL.** In the case at bar, the principal question is whether or not the evidence is sufficient to establish the relation of trustee and *cestui qui trust* between the defendant and the minor plaintiffs. The jury on this question found in favor of the plaintiffs and the court adopted this finding of the jury.

2. ———: ———: TRUST FUND: EQUITY. It is a universal principle of equity that when a trust fund can be traced into land, that the land is chargeable with the trust fund so invested.

3. ———: ———: ———: JURISDICTION: LAW: EQUITY. And in the case at bar, the contention that the plaintiffs have a full, adequate and complete remedy at law does not oust the court of its jurisdiction in equity to follow a trust fund and to declare a lien for its repayment upon the real estate in which it is clearly shown that the trust fund was invested.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*J. H. Whitecotton* and *W. T. Ragland* for appellant.

(1) Where the plaintiff has an adequate, available and complete remedy at law, a court of equity will not entertain jurisdiction, unless the matter in controversy comes peculiarly under some head of equitable cognizance. Cabanana v. Lisa, 1 Mo. 682; Janey v. Spedden, 38 Mo. 395; Pratt v. Clark, 57 Mo. 189; Dingle v. Pollack, 49 Mo. App. 479. Owners of notes which are wrongfully sold and the proceeds converted to the use of the wrongdoers, can maintain an action at law, and in the absence of an allegation of the insolvency of the wrongdoer, such owners have no standing in a court of equity. Gotcher v. Haefner, 107 Mo. 270. (2) And when, upon a hearing in an equity case, the plaintiff fails to make out a case entitling him to equitable relief, his petition should be dismissed, although the defense that plaintiff has an adequate remedy at law is not pleaded. Humphreys v. Atlantic M. Co., 98 Mo. 582 (overruling Blair v. Railroad, 89 Mo. 388, and Shickle v. Watts, 94 Mo. 419). (3) Although a right to a lien is claimed, no facts are alleged in the bill or proven in evidence that would create a lien upon the premises in question in favor of plaintiffs. 13 Am. and Eng. Ency. Law, 594.

(4) There is no averment in the bill that said lands are charged with a trust, nor are any facts alleged or proven that impose a trust, express or implied, upon the lands. 10 Am. and Eng. Ency. Law, 2.

*Bodine & Boyd* for respondents.

(1) The contention of appellant that a resulting trust must be established by such evidence as to leave no room for reasonable doubt in the mind of the chancellor is not the rule in this State as to a trust in personal property, but it may be established by parol, and may be proven from the light of all the attendant circumstances, and they may be such in a particular case as to require but slight independent proof to authorize a court of equity to declare such a trust. Huetteman v. Viesselman, 48 Mo. App. 582; Bank v. Moss, 80 Mo. App. 408. (2) The trust once established, the only question left for consideration is, did the defendant invest the trust funds in the real estate described in plaintiffs' petition, and if so can the plaintiffs be allowed a judgment giving to them a special lien on said real estate?

BLAND, P. J.—Plaintiffs are minors and sued by their next friend, Thomas J. Farrell. The substance of the petition is that on the sixteenth day of July, 1898, James P. Groves transferred to the defendant a promissory note dated December 7, 1894, for the sum of three hundred and sixty-three dollars with interest from date at the rate of eight per cent per annum compounded annually, executed by Mollie Farrell and payable to said James P. Groves, under the following agreement made between Groves and the defendant: That the defendant on the collection of the note should take from the proceeds of the same the sum of two hundred and fifty dollars and pay the excess to the plaintiffs. The sum of two hundred and fifty dollars being at the time paid to Groves

in the way of a promissory note for the note of three hundred and sixty-three dollars.

The petition alleges that Mollie Farrell paid off the note of three hundred and sixty-three dollars to the defendant, amounting at the time of payment to the sum of four hundred and eighty-four dollars and seventy cents; that after deducting the two hundred and fifty dollars, that defendant was entitled to retain out of the note, the sum of two hundred and thirty-four dollars and seventy cents remained in his hands, which sum he refused to pay the plaintiffs; that defendant invested the said sum of two hundred and thirty-four dollars and seventy cents in real estate described in the petition and took a conveyance thereof in his own name.

Plaintiffs pray judgment against the defendant for the sum of two hundred and thirty-four dollars and seventy cents and interest, and pray for a lien upon the real estate described and for general relief.

The answer was a general denial. The court submitted the following issue to a jury:

"Did James P. Groves on the sixteenth day of July, 1898, transfer to the defendant a certain promissory note bearing the date of December 7, 1894, for the sum of $363 with interest from date at the rate of eight per cent per annum, compounded annually, made, signed and executed by Mollie Farrell, and payable to the said James P. Groves, under the agreement then and there made between said Groves and defendant, if so the jury find, that the defendant upon the collection of said note should take from the proceeds of the same the sum of $250, the amount if so the jury find, due at the time of said agreement, if any, on a promissory note, at the time of said transfer if any, of said first mentioned note, assigned, if so the jury find, by defendant to said James Groves, and that defendant should pay the excess to plaintiffs, and was there paid to defendant on said $363 note so assigned by said

Groves to defendant, if so the jury find, the sum of $484.70 or any sum in excess of $250 in full payment of the same.

"If the jury from the greater weight of the evidence in the cause find the above issues of fact in the affirmative, that is, in favor of plaintiffs, they should so state in their verdict and find for plaintiff to the amount of such excess, if any, with interest on the same from the twenty-eighth day of November, 1898, at the rate of six per cent per annum, and if the jury find, their verdict should be for defendant."

The jury returned the following verdict:

"We, the jury, find the issues of the fact submitted by the court to the jury in the affirmative in favor of the plaintiffs and find for the plaintiffs in the sum of $234.70 with six per cent interest from the twenty-eighth day of November, 1898.

"P. G. MARR, Foreman."

The facts are that Mollie Farrell is the widow of John Farrell, who was the nephew of James P. Groves; that after the death of her husband she borrowed of Groves three hundred and sixty-three dollars, and to secure the same executed to him a mortgage on real estate which she held in her own name. The plaintiffs are the minor children of Mollie and John Farrell. The defendant, James P. Farrell, is the brother-in-law of Mollie Farrell, having married her sister but is in nowise of kin to Groves. The defendant had a note for two hundred and fifty dollars on Joe B. Roberson secured by a chattel mortgage on merchandise. Mollie Farrell had contracted to marry one W. C. Davis. To this marriage defendant was very much opposed. The defendant, as the attorney of Groves, had taken the note of Mrs. Farrell and the mortgage for Groves and kept them in his safe for him.

Groves testified that Farrell came to him after it was rumored that Mrs. Farrell was going to marry Davis and made this proposition: That he, Farrell, would let him have the

two hundred and fifty dollars on Joe Roberson; that the child-
ren stood a chance of losing everything because Mollie was
going to marry and the property was all in her name and said
that he would let him have the two hundred and fifty dollar
note on Joe Roberson if "I would let the children have the
balance over. . . . . I agreed to the proposition.   The child-
ren being related to me and being orphan children created a
sympathy for them."   That he agreed to accept the offer and
the exchange of notes was made.   He took the two hundred
and fifty dollar note and transferred the three hundred and
sixty-three dollars to the defendant.

Defendant testified that Groves came to him and first
wanted to sell the note for two hundred and fifty dollars in
money; that he afterwards agreed to trade the note for the
Roberson note of two hundred and fifty dollars; that he was
very eager to make the trade and that they did trade in that
way with the understanding that in case Mrs. Farrell remained
single she was to pay her note of three hundred and sixty-
three dollars with two hundred and fifty dollars and on that
understanding an exchange was made; that there was nothing
said about the children of Mrs. Farrell in the trade and there
was no agreement or understanding that they were to receive
any part of the three hundred and sixty-three dollars should
the whole of the note be collected.

Mrs. Farrell testified that defendant told her, after he
had traded for her note, that the children were to receive the
overplus of two hundred and fifty dollars; that Mr. Groves
had given that to the children.

Groves testified that after the three hundred and sixty-
three dollar note had been paid he had understood that the
defendant refused to account for any part of it to the children
and that he went to him, called him into a drugstore, called
E. G. McGruder as a witness to the conversation and that he
said to him he understood that he denied the overplus of the
note was to go to the children and that he admitted in that con-

versation the understanding between himself and defendant was that the children were to have the overplus.

E. G. McGruder testified that he was present in the drug-store and heard the conversation between Groves and the defendant; that Groves said to defendant that there was an overplus or excess of two hundred and thirty and some odd dollars in favor of him. "He said he requested Mr. Farrell to pay it to the children of John Farrell, and that he said, 'I understand, George, you said you wasn't going to do it.' Now he said, 'If you are not I demand you pay me the money; it is my money.' Mr. Farrell said, 'Uncle Jimmie, did you hear me say I wasn't going to do it?' and he said, 'No, but I got it from awful good authority,' and that is all I heard of the conversation."

In respect to this conversation, defendant testified that Groves called Dr. Johnson to go back in the drugstore and hear the conversation. "We went back; I think Mr. McGruder was there. There was a . . . . in the north end and it was quite a nice place. We went back, and he said 'I understand that you have refused to pay over the money to the children.' I asked him some questions about who had informed him. I said 'I never had been requested to pay anything to these children or not to pay it.' He said 'I now demand that you pay that money to me. That is my money to do as I please with. If I see fit I will give it to the children, and if I see fit I will keep it. It is mine to do as I please with.' He said, 'I now demand that you pay the money to me.' I said 'Uncle Jimmie, you are quite an old man and I don't want to hurt your feelings in any way, but,' I said, 'I can't now do that; no such a contract or agreement has been entered into,' and he said 'If you don't do it,' that is, 'if you don't pay that money back to me I will air the matter.' That is, 'if you don't pay it back to me I will sue you for it.' "

Defendant denied that he ever admitted at any time to Mrs. Farrell that he agreed with Groves to pay the excess of the note to her children.

The evidence is that the note for three hundred and sixty-three dollars was secured by a deed of trust on real estate worth at least six hundred dollars. The note was paid as a part consideration for eighty acres of land purchased by defendant of Mrs. Farrell after her marriage to Davis, and it is this land that plaintiff seeks to charge a lien upon.

The principal question in this case is, whether or not the evidence is sufficient to establish the relation of trustee and *cestui que trust* between the defendant and the minor plaintiffs. The jury on this question found in favor of the plaintiffs. The trial court adopted this finding of the jury. The evidence of Groves, Mrs. Davis (nee Farrell) and of McGruder tends to prove the creation of that relation. The evidence of defendant, while denying that any contract was made between himself and Groves to create the relation, makes an apology for converting the full amount of the note to his own use and benefit and justifies the action upon the hypothesis that he had a right to retain it all as a punishment to Mrs. Farrell, his sister-in-law, for marrying Davis.

The Groves note was well secured and this fact was known to Groves. Groves was not pressed for money. He was not akin to the defendant. He was akin to the plaintiffs. They were orphans and he had sympathy for them. The defendant was their uncle by marriage and a brother-in-law to their mother. Groves had reason to trust the defendant to carry out his wishes respecting the note and it is quite clear from the testimony of both Groves and the defendant that Groves had no intention to give the defendant the benefit of the trade, but the benefit was to go to the use of Mrs. Farrell or of the children. The great preponderance of the testimony is that it was expressly understood and agreed between Groves and the defendant when the exchange of notes was made that the overplus of the Groves note, if it should ever be collected, should be for the benefit of the children. Defendant received the note with this understanding. He has collected the full

amount of the note and is therefore chargeable as a trustee for whatever amount he collected on the note exceeding two hundred and fifty dollars. The note was not collected in money but was realized as a part consideration for the land described in the petition. The trust fund, therefore, is directly traced into the land and it is a universal equity principle that the land is in equity chargeable with the payment of the trust fund so invested. The contention of appellant, that the plaintiffs have a full, complete and adequate remedy at law does not oust the court of its jurisdiction in equity to follow a trust fund and to declare a lien for its repayment upon real estate in which it is clearly shown that the trust fund was invested. Patterson v. Booth, 103 Mo. 402.

The court declared the lien upon the land as was prayed for in the petition. The petition alleged facts sufficient to authorize this decree. The evidence, in our opinion, clearly justified the finding of the jury and of the lower court.

The judgment is affirmed.