# 310　　　　MARYLAND REPORTS.

STATE OF MARYLAND, USE OF MARGARET ANN MURRAY, FOR
HERSELF, AND AS GUARDIAN OF WILLIAM AND ALICE ANNE
MURRAY, vs. RICHARD BISHOP AND RICHARD C. MURRAY.

GUARDIAN AND WARD: GUARDIAN'S BOND, ACTION ON.—Where a guardian
illegally sells and transfers the property of the ward contrary to the Act
of Assembly, without a previous order of the Orphans' Court, and con-
verts the proceeds to his own use, it is no answer to an action on the
bond by the ward, that under the Act of Assembly the sale itself is
void and passed no title to the purchasers.

——: ——: DAMAGES, MEASURE OF.—In such case it is clear that the action
could not be maintained, and if nothing else appeared the measure of dam-
ages would be the value of the property illegally converted.

——: ——: CUMULATIVE REMEDY.—Where the property thus sold and trans-
ferred was the stock of an incorporated company, the ward is not confined
to his action on the bond, but has the cumulative remedy against the cor-
poration, may repudiate the sale as void and recover the stock thus illegally
transferred.

——: ——: DAMAGES, MEASURE OF.—But where the ward has recovered
from such incorporated company the value of the shares of stock illegally
transferred by the guardian, in the action upon the guardian's bond, the
measure of the damages is the loss actually suffered from the breach of the
condition of the bond.

And where the sale of the stock was held void under the Act of 1843, and it
or its value has been actually restored by the corporation, though this fact
does not defeat the action on the bond, it reduces the right of the plaintiff to
the recovery of nominal damages only.

THE ENTRY OF THE SUIT FOR THE USE OF THE CORPORATION, GIVES IT NO RIGHT
OF ACTION ON THE GUARDIAN'S BOND.—Where, under the facts above stated,
the suit is entered to the use of the corporation, and actually prosecuted for
its benefit, after the restoration of the stock or its value, though entitled
its action against the guardian to recover back the price paid him for the
stock, it has no right of action on the guardian's bond.

APPEAL from the Superior Court of Baltimore City.

This case was argued in the Superior Court of Balti-
more City upon the following agreed statement of facts:

"It is admitted in this case that the said Richard C.
Murray was duly appointed by the Orphans' Court for
Baltimore City the guardian of his infant children, Mar-

garet A. Murray, William E. Murray and Alice Anne Murray, and that after his appointment he gave bond for the faithful performance of his duties as guardian, which was duly approved by the said Court, a copy whereof is herewith filed, marked No. 1, as part of this statement.

"That the sureties in the said bond, who duly executed the same, were Edward Dowling and Edward Boyle, (both of whom died insolvent before the institution of this action,) and Richard Bishop, one of the defendants in the present case.

"That subsequently to the appointment of the said Rich'd C. Murray, as guardian, there stood upon the books of the President and Managers of the Baltimore and Fredericktown Turnpike Road Company one hundred and eighty-three shares of the capital stock of said company, the property of said infants, of which sixty-one shares stood in the name of the said Margaret A. Murray, sixty-one in the name of the said William E. Murray, and the remaining sixty-one in the name of the said Alice Anne Murray, all of which stock was transferred to the said infants (upon the books of the said company) by a certain Charles Feinour, on the eighteenth day of October, 1855. That the said infants had in like manner standing in their names upon the books of the Union Manufacturing Company twelve shares of its capital stock, which belonged to them in equal several parts or number of shares. That the said Richard C. Murray, guardian as aforesaid, did, on the eleventh day of December, 1857, sell all of the said one hundred and eighty-three shares of the capital stock of the said Turnpike Road Company, and did afterwards cause the same to be transferred upon the books for said company to the purchasers or purchaser thereof, and that at the time of the consummation of the sale as above mentioned, he did receive, as the purchase money for the said stock, the sum of five hundred and four-

teen dollars and sixty-eight cents.   That the said Murray
also sold and caused to be transferred upon the books of
the corporation, the twelve shares of the capital stock of
the aforesaid Union Manufacturing Company, being the
property, as before stated, of the said infants, and did
receive therefor, upon the twenty-eighth day of December,
1857, the sum of one hundred and fifty-six dollars.   All
the aforementioned sales were effected by the said Murray
without any order of the Orphans' Court authorizing the
same, nor did he render any account whatever as guardian
to said Court, although frequently cited so to do, but con-
verted and applied the same to his own use.

"That on proper application being made to the Orphans'
Court the letters of guardianship, which had been granted
to the said Richard C. Murray, were revoked on the
twenty-fifth day of January, 1859, and Margaret A.
Murray, originally one of his wards, but having subse-
quently arrived at the age of twenty-one years, was ap-
pointed by the said Court guardian of her infant brother
and sister, the said William E. and Alice Anne Murray,
in the place of her father, the said Richard C. Murray ;
upon the same date the usual bond was duly executed and
delivered by the new guardian, and approved by the Court.
That after the appointment of the said Margaret as guar-
dian, the said Richard C. Murray was cited before the
Orphans' Court to account for his management of his
wards' estate, but that he never rendered any account of
any kind or description whatsoever, nor did he, while
guardian, pay over any part of the money received by
him for the stocks sold as aforesaid to either of said wards,
or on their or either of their accounts, nor has he done so
since his removal.   That the said Margaret A. Murray,
for herself, and as guardian of her sister and brother,
applied to the said Turnpike and Manufacturing Com-
panies, respectively, for the value of the stock which had

been transferred upon their books to the purchasers to whom they were sold by the said Richard C. Murray, together with the interest thereupon up to the date of the demand; but that the said companies refused to pay the money thus demanded of them, except upon the condition that the said Margaret should first cause suit to be instituted upon the guardian's bond of the said Richard C. Murray in the ordinary manner, and assign the claim in the said suit to them respectively, according to the value of the shares of their respective stocks sold as aforesaid by the said Murray. That these terms were agreed to by the said guardian, and this suit was accordingly instituted, and the said claims against the guardian's bond transferred to the said Baltimore and Fredericktown Turnpike Road Company, and a certain Daniel B. Banks, President of the said Union Manufacturing Company, (he having been the purchaser of the twelve shares of manufacturing stock sold as above mentioned by said Murray, and having individually paid the amount mentioned in the assignment to him,) by assignments of the ninth and eighteenth of May, 1860, which said assignments are to be taken as a part of this statement, and are herewith filed, marked Nos. 2 and 3.

" Whereupon the said companies respectively paid to the said Margaret the value of the said shares, (as mentioned in the said assignments,) which had stood upon their books in the names of the said Margaret and the said infants, respectively.

"That the bringing of said suit and the assignments of the claims as above stated, and the authority to enter said uses to the said Turnpike Company and Daniel B. Banks, were all confirmed by and derived from the said Orphans' Court by an order of the twenty-seventh of June, 1860, and will more fully appear by the petition of the said Margaret Murray and the said order of the Court

thereupon passed; herewith filed, marked respectively Nos. 4 and 5, and which are to be taken as part of this statement, subject to their legal operation in the judgment of this Court, and to all questions as to the jurisdiction of the Orphans' Court in the premises.

"It is further agreed that if, in the opinion of the Court, the plaintiff shall be entitled to recover upon the foregoing statement of facts other than nominal damages, then judgment in proper form shall be given for the sum of five hundred and fourteen dollars and sixty-eight cents, with interest from the eleventh day of September, 1857, and for the further sum of one hundred and fifty-six dollars, with interest from the twenty-eighth day of December, 1857, with costs, otherwise judgment shall be rendered for the defendants with costs.

"It is also agreed that an appeal may be taken by either party from the judgment of said Court to the Court of Appeals of Maryland, which shall have power to hear and determine the same, and further that inferences of fact may be drawn by either Court from the facts stated."

Exhibits Nos. 1, 2, 3, 4 and 5, forming part of the said argument, were as follows:

(No. 1.)

This exhibit was a duly certified copy of the guardian's bonds.

(No. 2.)

"BALTIMORE, 9th May, 1860.

"Received from the President, Managers and Company of the Baltimore and Fredericktown Turnpike Road, the sum of five hundred and eighty-nine dollars and nine cents, ($589.09,) and in consideration whereof, the undersigned do hereby transfer their claim against Richard C. Murray and his surety, Richard Bishop, to the said Company, and for which said claim suit has been brought against said

State use of Murray *vs.* Murray et al.

Richard C. Murray and Bishop, in the Superior Court of Baltimore City, and an order given to have the same entered to the use of said Company ; this transfer being limited to the sale of the stock of said Company improperly made.

> Signed, MARGARET MURRAY, for herself,
> and Guardian of W. E. and Alice Anne
> Murray, by T. Parkin Scott, Att'y.''

(No. 3.)

'' For value received, I assign unto Daniel B. Banks the claim of myself and my two wards, Alice and William Murray, against Richard C. Murray and his securities, for the value of twelve shares of the capital stock of the Union Manufacturing Company of Maryland, illegally sold and transferred by said R. C. Murray, viz :

12 shares sold, a $13........................$156 00
Interest 2 yrs. 4 mos. 18 days............   22 31
                                           _____
Baltimore, 18th May, 1860.                 $178 31

> T. PARKIN SCOTT, Att'y for Margaret A.
> Murray, in her own right, and as guar-
> dian of Alice and William E. Murray.''

(No. 4.)

'' *To the Honorable the Judges of the*
> *Orphans' Court of Baltimore City :*

'' The petition of Margaret A. Murray, guardian of Wm. Murray and Alice Murray, her minor brother and sister, respectfully states to your Honors, that the former guardian of your petitioner and of said minors, Richard C. Murray caused to be sold and transferred one hundred and eighty-three shares of the capital stock of the President and Managers and Company of the Baltimore and Fredericktown Turnpike Road, on the 11th day of December, A. D. 1857,

being the property of his said wards, and received therefor, on the day and year last aforesaid, the sum of five hundred and fourteen dollars and sixty-eight cents. And the said Richard C. Murray did also, on the 24th day of December, A. D. 1857, sell and cause to be transferred twelve shares of the capital stock of the Union Manufacturing Company of Maryland, and being the property of his said wards, for the sum of one hundred and fifty-six dollars; that the said Richard C. Murray, former guardian, received the aforesaid sums of money, which he has not paid, nor any part thereof, to your petitioner or either of said wards, nor rendered any account to your petitioner or to this honorable Court.

" Wherefore your petitioner caused suit to be instituted upon the bond of the said former guardian against him and his security, Richard Bishop, the other securities on said bond, Edw'd Boyle and Edw'd Dowling, having departed this life, to recover the proceeds of the sales of said stocks. That since the institution of said suit, your petitioner has assigned a part of her claim therein, to the amount of five hundred and fourteen dollars and sixty-eight cents, to the said Turnpike Company, and has given an order to have the same to said amount entered to the use of said Company.

"That your petitioner has also assigned the other part of her claim in said suit, to the amount of one hundred and fifty-six dollars, to a certain Daniel B. Banks, of the city of Baltimore, and has also given an order to have the said suit, to the amount last aforesaid, entered to the use of the said Banks. That your petitioner received full value for both said claims.

" Wherefore your petitioner prays that the institution of said suit, and the assignment of said claims and entries to the several uses as hereinbefore stated, may be sanctioned and ratified by the order of this honorable Court.

T. Parkin Scott, Sol. and Att'y
for Petitioner and the Wards."

State use of Murray *vs.* Murray et al.

(No. 5.)

"In Baltimore City Orphans' Court, June 27, 1860. On application by the petition of Margaret A. Murray, guardian of William Murray and Alice Murray, her minor brother and sister, filed the 23d day of June, 1860, it is ordered by the Court that the institution of the suit mentioned in the said petition, and other assignments of the claims therein stated to a certain Turnpike Company and Daniel B. Banks, and the order to enter said suit to the several uses to the amounts respectively mentioned to the said company and Daniel B. Banks, be and the same are hereby approved, ratified and confirmed.

J. SPEAR SMITH,

Jos. H. AUDOUN,

FRANKLIN SUPPLEE."

These exhibits were all duly certified.

The case being submitted upon the aforegoing agreement and exhibits, the Court below (MARTIN, J.) entered a judgment of *non pros.* with costs, &c., to the defendants, as per the said agreement. The plaintiffs appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*H. R. Dulany* for the appellants.

The appellants, who were the plaintiffs below, contend:

1st. That although the nature and extent of the obligations of the sureties to a bond depend altogether upon the terms of the instrument itself, and their liability cannot be increased nor in any way affected by resort to implication, yet that they are responsible to the full extent which the terms of the instrument, or the character of the act for which they have obliged themselves, will warrant. *Strawbridge et al. vs. The Balto. and Ohio R. R. Co.,* 14 *Md. Rep.,* 360, 366, 367. *Conant vs. Kendall,* 21 *Pick.,* 36. *Cole vs. Eaton,* 8 *Cushing,* 587.

2d. That the sale of the stocks, without an order of the Orphans' Court authorizing the same, and the conversion of the proceeds thereof to his own use by Richard C. Murray, constituted two distinct breaches of the condition of his guardian's bond, and rendered it obnoxious to the present action. *Act* 1843, *ch.* 304, *sec.* 1.

3d. The fact that the new guardian had power to sue the Turnpike and Manufacturing Companies, for permitting the transfer of the stock upon their books to the purchasers, without an order of the Orphans' Court, as required by law, (Act 1843, ch. 306, sec. 1, *The Mayor and City Council of Balto. vs. Wm. B. Norman,* 4 *Md. Rep.*, 352,) or that it was made her duty, by the second section of the above mentioned act, to pursue the stock when sold, and recover possession thereof, does not in any degree impair the common law remedy against the bond. All the remedies are cumulative and coexist; the object of the legislature being to guard in every possible way the property of infants from injury or destruction, by the unauthorized acts of their guardians. *The Mayor and City Council of Balto. vs. Howard,* 6 *H. & J.,* 383. *Farmers' Turnpike Road vs. Coventry,* 10 *John.,* 388. *Chilton vs. Parks et al.,* 15 *Ala.,* 674. *Withers vs. Hickman,* 6 *B. Monroe,* 292.

4th. Assuming, then, that the action against the sureties was warranted by the breaches of the condition of the bond before noticed, the appellants will next contend that the assignments, by Margaret Murray, the new guardian, to the Company of the Baltimore and Fredericktown Turnpike Road, and Daniel B. Banks, made, respectively, upon the ninth and eighteenth days of May, 1860, and ratified and approved by an order of the Orphans' Court for Baltimore City, of the 27th June, 1860, were valid and effective instruments, and that they operated to transfer to the assignees all the rights possessed by the assignor, or her wards, against the bond of Richard C. Murray, the old

guardian. *Commonwealth vs. Barstow et al.*, 3. *B. Monroe*, 290, *p.* 293. *Kiersted vs. The State use of Costello*, 1 *G. & J.*, *p.* 231. 1 *Code, Art.* 9, *sec.* 1.

5th. It cannot be argued that the assignees are not entitled to the benefit of the action instituted against the bond, on the ground that, by transferring the stock upon their books without an order of the Orphans' Court, they conduced in some degree to the loss, or enabled the guardian to perpetrate the wrong upon his wards ; because, in the first place, it is clear that the provision violated by the companies was enacted only for the benefit and protection of the infants. Evidently, therefore, it cannot be invoked by the sureties.

But, further, it is denied that such transfer did conduce in any way to the loss. The real injury to the infants was the misapplication, by Murray, of the proceeds of the sales of stock affected by him. But it is beyond doubt, that he could have made this misapplication whether the transfer had been in all respects legitimate or not.

Lastly, however, it will be contended that, even admitting that the sureties may take advantage of the enactment in question, and that the conduct of the companies did, in some degree, conduce to the loss, the assignees will not therefore be deprived of any rights which they would otherwise have had under the said assignments, for it has been settled that a party may, to a certain extent, be the author of a loss, and still suffer no disability thereby, provided he was not the efficient cause thereof. *Deering vs. Earl of Winchelsea*, 1 *Cox, Chan. Cases, p.* 318. *Fell on Guarantees, p.* 242, *Ed.* 1859.

The appellants rely particularly upon *Whiting use of the Sun Mutual Insurance Co. vs. The Independent Mutual Insurance Co.*, 15 *Md. Rep.*, 297, a case which was not cited by counsel, or referred to by the Court, in the trial below.

No counsel for the appellees appeared at the hearing.

State use of Murray *vs.* Murray et al.

BARTOL, J., delivered the opinion of the Court.

We entertain no doubt whatever that the breaches alleged in the amended nar. are within the conditions of the bond sued on, and that the fourth plea of the defendants would be no defence to the action, but would be bad on demurrer. The object of the guardian bond is to secure the ward against the illegal disposition of his property by the guardian, or its maladministration; and where a guardian illegally sells and transfers the property of the ward contrary to the Act of Assembly, without a previous order of the Orphans' Court, and converts the proceeds to his own use, it is no answer to an action on the bond by the ward; that under the Act of Assembly the sale itself is void, and passed no title to the purchaser. In such case it is clear that the action could be maintained; and if nothing else appeared the measure of damages would be the value of the property illegally converted.

The case before us however is not presented in this form, it arises upon an agreed statement facts, (*ante pp.* 310 *to* 317,) and the only question presented is, what is the true measure of damages upon the facts stated.

In the case of the *Mayor and City Council of Baltimore, vs. Norman,* 4 *Md. Rep.,* 352, it was decided that a transfer of stock standing in the name of a ward, made by a guardian without the order of the Orphans' Court, was under the Act of 1843, ch. 304, void, and the rights of the ward were not affected by it.

It thus appears that in a case like this, the ward is not confined to his action upon the bond; but has the cumulative remedy against the corporation, may repudiate the sale as void, and recover the stock thus illegally transferred. See also *Chew & Goldsborough vs. The Bank of Baltimore,* 14 *Md. Rep.,* 300.

In this case it appears from the facts stated that the

*cestuis que use* have recovered from the Fredericktown Turnpike Road Company, and the Union Manufacturing Company, the value of the shares of stock in those companies respectively, which had been illegally transferred by their guardian, and the question is whether that fact reduces the measure of damages in this action, or whether they are entitled to recover in this suit the same amount as if the stock had been lost to them and they had received no indemnity or compensation whatever from the companies. The mere statement of this question, it seems to us, carries with it its own solution. No authority need be cited to establish the familiar proposition, that where a party has cumulative remedies against one person or several persons to recover compensation for a tort, he cannot after he has recovered compensation in one form of action recover from the same person indemnity for the same wrong in another form of action; nor, if the remedy be against several, and compensation be recovered from one, can damages for the same cause of action be afterwards recovered against the others. The measure of damages in this suit is the loss actually suffered by the *cestuis que use*, from the breach of the condition of the bond committed by the guardian, and if the sale of their stock was void under the Act of 1843, and they have in fact had it or its value restored to them, by the companies, then, though this fact does not defeat this action, it reduces the right of the plaintiff to recover nominal damages only, and according to the agreement in the case, a judgment for the defendants was properly entered.

It appears from the statement of facts, that the two companies made it a condition precedent to their restoring the stock or its value, that this suit on the bond should be instituted, and in conformity with that requirement this suit was brought, and is entered for their use and really prosecuted for their benefit. The appellants have relied

21    v. 24

upon this fact as material in the decision of the case, and have argued that it falls within the principle decided in *Merryman vs. State, at the instance of Harris, use of Murray,* 5 *H. & J.,* 423, and *Whiting, use of Sun Mutual Ins. Co. vs. Independent Mutual Ins. Co.,* 15 *Md. Rep.,* 297.

But the distinction between those cases and this is very obvious; in them it was held that a defendant could not claim exemption from liability for his own debt or on his own contract, or reduce the amount of the plaintiff's recovery, on the ground that some other person who was a stranger to him and not liable to the plaintiff for the same debt, or in respect of the same cause of action, had under a mistake of facts or of law, paid and indemnified the plaintiff. In such case the payment does not inure to the benefit of the defendant, and this for obvious reasons. If the payment were made under a mistake of fact, the plaintiff would be liable in an action by the party from whom he had received, and if paid under a mistake of law, although he could not be compelled by an action to pay it back, yet in good conscience he ought to do so, and in neither case could the defendant, who is a stranger to the transaction, claim that the plaintiff should retain the sum so received by him from others, so that he (the defendant) may be exempt from liability upon his own contract to which they are strangers.

Here the companies were not strangers to the transaction upon which the plaintiff's right of action arose, the illegal transfer of their stock; on the contrary they were in contemplation of law, *tort fesors,* equally with Richard C. Murray, the guardian, and were alike responsible to the wards for the stock or its value. They might be entitled to their action against Richard C. Murray, to recover back the price paid him for the stock, but they have no right of action on the guardians' bond, and cannot therefore legally

OCTOBER TERM 1865.      323

claim that in this suit a larger sum should be recovered than if the case had not been entered for their use.

This Court being of opinion that upon the facts stated, the original *cestuis que use* are entitled to recover no more than nominal damages, the judgment appealed from will be affirmed.

*Judgment affirmed.*

