THE STATE OF MISSOURI *ex rel.* CHARLES L. PATTERSON, Respondent, v. EUGENE C. TITTMAN, Administrator of William H. Horner, Deceased, *et al.*; JOHN B. C. LUCAS, Appellant.

St. Louis Court of Appeals, May 9, 1893; Motion for Rehearing Overruled June 20, 1893.

1. **Guardian and Ward**: LIABILITY ON GUARDIAN'S BOND. A guardian, under leave of the proper probate court bought in for his ward property sold under a deed of trust belonging to the ward; but the guardian took the title to the property in his own name, and afterwards mortgaged it to secure his individual indebtedness. *Held*, that this constituted waste, for which a recovery could be had by the ward on the guardian's bond.

2. ———: ———: COUNSEL FEES. The mortgage thus given was canceled in an action in equity, instituted by the ward after the death of the guardian. The surety on the guardian's bond was notified of the proceeding and requested to prosecute it, but, though his attorney assisted in the prosecution, the burden of the work was left with the attorney for the ward. *Held*, BOND, J., *dissenting*, that the fees paid by the ward to his attorney for services in that proceeding could be recovered from the surety in a suit on the bond.

3. **Administration**: LIMITATION OF TIME FOR PRESENTATION OF CLAIMS. A party having a claim against the estate of a decedent does not lose his right of action against the administrator of that estate by his failure to present his claim for allowance within the two years limited therefor by statute, when, though entitled to nominal damages, he had no right of substantial recovery during that period. This rule is applied to the ward's above mentioned claim for counsel fees as damages for waste committed by his guardian.

The State ex rel. Patterson v. Tittman.

4. ——: ——: PRINCIPAL AND SURETY. And *held* further by BOND, J., that a ward does not lose his right .of action against the sureties on the bond of his deceased guardian by his omission to have his claim allowed against the estate of the guardian within the time limited by statute.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED AND CERTIFIED TO THE SUPREME COURT.

*Lee, McKeighan, Ellis & Priest* and *Montague Lyon,* for appellant.

(1) The plea of the statute of limitations contained in the appellant's amended answer should have been sustained. 1 Revised Statutes, 1889, secs. 183, 5329; *Johnson v. Smith's Adm'r,* 27 Mo. 591; *Coleman v. Willi,* 46 Mo. 236; *State ex rel. v. Hoshaw,* 86 Mo. 193; *Bent v. Priest,* 86 Mo. 475; *State v. Blake,* 2 Ohio St. 147; *Bridges v. Blake,* 106 Ind. 332; *Auchaumpaugh v. Schmidt,* 70 Iowa, 642; *Ratcliff v. Leunig,* 30 Ind. 289; *Bonham v. The People,* 102 Ill. 434; *Glass v. Woolf's Adm'r,* 82 Ala. 281; *Mann v. Everts,* 64 Wis. 372. (2) The court erred in giving the instruction asked by the respondent, for the reason that the appellant's liability could only be determined by the strict terms of his obligation, and he was not liable for the expenses and counsel fees incurred by the respondent relator in the prosecution of the suit in equity. 1 Brandt on Suretyship & Guaranty [2 Ed.] sec. 93; *Mann v. Everts,* 64 Wis. 372; *State v. Cutting,* 2 Ohio St. 1; *Kennison v. Taylor,* 18 N. H. 220; *State v. Bishop,* 24 Md. 310; *Woodstock Bank v. Downer,* 27 Vt. 539; *Henry v. Davis,* 123 Mass. 345; *Hallock v. Belcher,* 42 Barb. 199; *Oelrichs v. Spain,* 15 Wall. 211.

*Orr, Christie & Bruce,* for respondent.

(1) There is no merit in the appellant's plea of the statute of limitations. If there be a breach of a bond or of covenants in a deed of warranty, the cause of action on account thereof does not accrue until there exists the right of substantial recovery. *Miller v. Woodward,* 8 Mo. 169; *Finney v. State to Use Estiss,* 9 Mo. 227; *Chambers v. Smith,* 23 Mo. 174; *Burton v. Rutherford,* 49 Mo. 255; *Singleton v. Townsend,* 45 Mo. 379; *Jameson v. Jameson,* 72 Mo. 640; *Tenny v. Lasly,* 80 Mo. 664. (2) In law it was appellant's duty to protect respondent against any loss or damage arising from the unfaithfulness of Horner as his curator. Since respondent was bound to institute a suit for the defense of his title, which suit was rendered necessary by reason of his curator's unfaithfulness, the appellant, having approved of the suit and having participated in it, is liable for the costs incurred therein, including counsel fees. *Strong v. Phœnix Ins. Co.,* 62 Mo. 299; *N. Y. State Mar. Ins. Co. v. Ins. Co.,* 1 Story, 458; *Hastee v. De Peyster,* 3 Haines, 190; *Robins v. City of Chicago,* 4 Wall. 657; *N. H. & N. Co. v. Hayden,* 117 Mass. 433; Sedgwick on Damages [8 Ed.] sec. 236; *Mors, LeBlanch v. Wilson,* L. R. 8 C. P. 227; *Dubois v. Hermance,* 56 N. Y. 673; *Kip v. Brigham,* 7 Johns. 168; *Byerson v. Chapman,* 66 Me. 557; *Spelman v. Terry,* 74 N. Y. 451.

BIGGS, J.—Action on a guardian's bond. The facts are undisputed. In December, 1874, John B. Johnson, curator of the estate of the relator (who was then a minor of about ten years of age), resigned his trust, and W. H. Horner, now deceased, was appointed in his stead by the probate court of the county of St. Louis. Horner accepted the trust, and he as principal,

with the appellants, J. B. C. Lucas and William Lucas as his sureties, executed a bond conditioned that he would, "truly and faithfully discharge the duties of his office of curator according to law."

A principal note of Phebe Hunt for $5,000, dated January 27, 1871, payable three years after date, and one semi-annual interest note for $200 of the same date, were among the property turned over by Johnson to Horner, and to secure them Phebe Hunt had given a deed of trust on certain real estate in the city of St. Louis. There was also another note of Phebe Hunt for $6,385.34, dated October 26, 1874, payable three years after date, and three annual interest notes for $638.33 each, to secure which another deed of trust was given on the same property and certain other real estate in said city.

The trustee in the first deed of trust having refused to act, Horner as curator on May 20, 1881, applied to the circuit court of the city of St. Louis for the appointment of another trustee, which was done, the court appointing R. D. Lancaster.

Default having been made in the payment of all the notes, the property was advertised for sale under both deeds of trust, the sale to take place June 20, 1881.

On June 17, 1881, Horner represented to the probate court that the property was advertised for sale, that the total indebtedness amounted to about $12,000, and that, unless he would bid on the property, he believed that it would be sold at a sacrifice. Thereupon the court by an order entered of record authorized Horner to buy the property for his ward at the sale, provided it did not sell in excess of $10,000. Horner bought under both deeds of trust for $2,500. He received deeds from both trustees conveying to him *individually* the entire property; in one of the deeds, however, was embodied the order of the circuit court reciting the fact

that Lancaster had been appointed trustee at the instance of Horner as curator of the estate of Charles L. Patterson. The deeds of the trustees also recited the fact that J. B. Johnson, curator of Charles L. Patterson, was the original beneficiary in both deeds of trust.

On June 25, 1881, Horner executed a deed of trust to R. D. Lancaster as trustee for the State Savings Association of St. Louis, whereby he conveyed the property so purchased by him to secure the payment of his *individual debt*, amounting at the time to $2,500.

On June 17, 1882, Horner executed and placed on record a quitclaim deed conveying the property to the relator; no reference, however, was made in this deed to the deed of trust previously given to secure the note held by the State Savings Association.

On June 21, 1882, Horner filed in the probate court his seventh annual settlement as curator, in which he set forth the purchase of the land for his ward for the sum of $2,500, and the subsequent conveyance by him of the property to the relator. The statement contained no reference to the incumbrance which the curator had placed on the property.

On August 16, 1885, the relator reached his majority, and on October 23, 1886, Horner died without having made a final settlement of his curatorship.

On November 9, 1886, letters of administration on the estate of Horner were granted to the defendant, Eugene C. Tittman, notice of which was afterwards published as required by law.

On January 10, 1887, Tittman, as administrator of Horner, made a final settlement of the curatorship. At the time this settlement was made, neither the relator nor Tittman had notice of the incumbrance on the property, and therefore the relator made no objection to the approval of the settlement.

In April, 1887, Lancaster advertised the land for sale under the deed of trust given by Horner, and by that advertisement the relator learned for the first time of the fraud that had been practiced by Horner. At this juncture the relator brought a suit in equity in the circuit court of the city of St. Louis to enjoin the sale and to cancel the deed of trust, and also to set aside the final settlement of the curatorship. The circuit court by its decree set aside the settlement, and also decreed a cancellation of the deed of trust. The holders of the note secured by the deed of trust appealed to the supreme court, where, on February 23, 1891, the judgment of the circuit court was affirmed. *Patterson v. Booth*, 103 Mo. 402.

It also appears from the evidence that, either before or just after the relator filed the suit in equity, he notified the appellant of the institution of the suit, and he required him to appear and conduct the suit. It is conceded that the appellant's attorney assisted in the conduct of the case, but left the burden of the work to the relator's attorney. In the prosecution of the suit the relator paid $500 counsel fees, and incurred other necessary expense amounting to $103.65.

The relator claimed that the foregoing facts, which were stated in the petition, constituted a breach of the conditions of the bond, in that Horner had *impaired the title* to the trust property in his attempt to charge it with the payment of his individual debt, and that the defendants were answerable to the relator for all proximate damages resulting from this breach of trust, including counsel fees and other necessary non-taxable costs paid by him in the prosecution of the equity suit.

The defendants denied the alleged breach of the bond, and that they were liable for counsel fees and other non-taxable costs as alleged; and they pleaded

in bar of the action the failure to present the alleged claim for allowance against the estate of Horner within two years after the grant of letters. The replication put in issue the new matter set forth in the answers.

The court sitting as a jury rendered judgment against both defendants for the penalty of the bond, to be satisfied by the payment of $644.37, which was the amount of the attorney's fees and non-taxable costs paid by relator, with six per cent. interest thereon from the date of payment. The defendant Lucas only has appealed.

The execution by Horner of the deed of trust, in which he attempted to charge the real estate of his ward with the payment of his individual debt, was a breach of the conditions of his bond. By this wrongful and unlawful act he committed waste. Any act of his which tended to decrease the value of the real estate held by him for his ward, or which *impaired the evidence of title thereto*, was waste for which his estate and the sureties on his bond are liable. *Bond v. Lockwood*, 33 Ill. 212; Field's Law of Guardians, sec. 98, and authorities cited.

Did the court err in the assessment of the damages is the next question.

The recovery for the violation of contracts of indemnity includes all damage which is the natural or proximate result of the breach. The supreme court in the case of *Kansas City Hotel Co. v. Sauer*, 65 Mo. 279, held that the liability of the obligors for the violation of such a contract is measured "by a sum sufficient to put the plaintiff in as good plight as if defendant had kept his covenant." This is the general rule, and we can see no good reason for adopting a different rule in actions on bonds of guardians or curators. The doctrine of *strictissimi juris*, which is here invoked for the protection of appellant against liability for the

special damages assessed, has application only in determining the liability of a surety in the first instance, and not to the *extent* of such liability when once determined. *Fisse v. Einstein,* 5 Mo. App. 78; *Yeatman v. O'Reilly,* 12 Mo. App.* 568.

Now, it must be conceded that the institution of the equity suit was made necessary by the wrongful act of Horner; therefore the expenses necessarily incurred by the relator must be considered as the natural or proximate result of the breach of the bond. As it is admitted that the defendant had notice of the suit, that he was given an opportunity to take charge of its prosecution, and that its successful prosecution redounded to his benefit, we think the action of the court in the assessment of damages was clearly right. It met the equities of the case and gave full idemnity for the wrong done. We also think that the action of the court is sustained by analogous cases.

The case of *Johnson v. Meyers, Executor,* 34 Mo. 255, was an action for a breach of warranty of title to a slave. The complainant was compelled to defend a suit brought against him for the recovery of the slave. The court held that he could recover his costs in defending this suit, if he gave his vendor notice of it.

In the case of *Kansas City Hotel Co. v. Sauer, supra,* the plaintiff sued for a violation of the covenants in a bond of indemnity. The bond was given to save the plaintiff harmless from certain mechanic's lien claims. The recovery in the action included attorney's fees and other expenses paid by plaintiff in defending against the claims, and the supreme court sustained the judgment.

In the case of *Ryerson v. Chapman,* 66 Me. 557, it was held that the grantee in a deed of general warranty, after eviction by one having superior title, is entitled to

recover in an action on the covenants the amount of all judgments obtained against himself by the party dispossessing him, together with all reasonable expenses of litigation, including counsel fees.

Mr. Sedgwick says: "Where a plaintiff has become involved in another suit by defendant's acts, he should recover the amount of reasonable expenses in which he has become involved, and there seems to be no reason for distinguishing between counsel fees and other proper costs and expenses. Sedgwick on Damages [8 Ed.] sec. 236.

The defense of the special statute of limitations, barring the allowance of claims against an estate, unless presented within two years after the grant of letters, is without merit. It may be true that there was a technical breach of the bond the moment Horner executed the deed of trust, but in contemplation of law the cause of action did not accrue to the relator until his right to recover substantial damages existed. *Tenny's Adm'r v. Lasley's Adm'r*, 80 Mo. 664; *Chambers' Adm'r v. Smith's Adm'r*, 23 Mo. 174.

In *Chambers Adm'r v. Smith, Adm'r, supra*, the suit was brought against an estate for damages for the breach of the covenant of seizin, contained in a deed. The suit was instituted more than three years after the grant of letters. The court in disposing of a similar plea said: "In reference both to the limitation and to the person entitled to the benefit of the covenant, we look in a case of the present character to the right of substantial recovery, and will not hold a party barred by the lapse of time which ran before he was allowed to recover (for we make no destinction here between no recovery and a mere nominal one)." This language is applicable to the case at bar; for at no time could the relator have recovered anything in excess of nominal damages until the final determination of the

equity case in the supreme court in February, 1891. We must therefore rule this assignment likewise against the appellant.

The judgment of the circuit court will be affirmed. Judge ROMBAUER concurs. Judge BOND dissents.

BOND, J. *(dissenting.)*—I am unable to agree with the disposition of this case in the majority opinion of this court.

This is an action on a curator's bond, executed by W. H. Horner with appellant as one of the sureties thereon, for the purpose of recovering certain expenses and counsel fees incurred and paid by relator in the successful prosecution of a suit to vest title in himself in certain real estate, alleged in the petition herein to have been purchased by the curator with money of relator, and to have been conveyed to said curator in his individual name and subsequently incumbered for his private use and benefit.

The facts are that W. H. Horner, curator of respondent, came into possession as such curator of certain notes due his ward which were secured by a deed of trust. Upon foreclosure of this deed of trust, said curator bid in the property and took a deed therefor in his individual name, and credited the purchase price on the notes in his hands belonging to his ward. A few days after this purchase, to-wit, June 25, 1881, said Horner and wife conveyed by deed of trust duly recorded the said property to secure a loan of $2,500 made to him and interest notes thereon, all payable in one year. On June 7, 1882, the said Horner, then a widower, executed to relator a quitclaim deed duly recorded to said property. On July 21, 1882, the said Horner made a seventh annual settlement, in which among other things he reported the purchase by him of the property at

said foreclosure sale for the benefit of his ward and the subsequent conveyance thereof to said ward, not disclosing his having mortgaged it before he quitclaimed to his ward. On August 16, 1885, said ward who was a non-resident of the state reached his majority. On October 23, 1886, said curator, W. H. Horner, died without having made final settlement of his said curatorship. The public administrator took charge of his estate and on December 9, 1886, gave the statutory notice for the exhibition of claims.

Neither Charles L. Patterson relator, nor his counsel knew of the making of the deed of trust by said Horner, dated June 25, 1881, to secure his said note of $2,500 until informed of the fact sometime in April, 1887. They then learned also that said note had been transferred in due course of trade, and that the last holders were causing an advertisement of sale under said deed to secure payment.

On September 7, 1887, suit was brought by relator Charles L. Patterson to set aside and annul the said trust deed given by said Horner as aforesaid on the property in question to secure his individual indebtedness. A decree sustaining the petition of relator was entered in the circuit court, and upon an appeal affirmed in the supreme court on February 23, 1891. Appellant was notified by relator of the institution of his suit to cancel said trust deed and vest title in himself. Appellant's attorney cooperated with relator's attorney in the prosecution of said suit in the circuit court. Relator paid his counsel for services and expenses in said suit the sum of $603.65. No claim nor demand was exhibited or presented against the estate of W. H. Horner by relator. Said estate, though insolvent, paid out a dividend of forty-two hundredths on debts established; total payment $11,916.40.

There was a judgment for relator from which an appeal was taken, whereon two errors are assigned. *First.* That the court erred in overruling appellant's plea of statute of limitations. *Second.* In the giving of respondent's instructions. It is clear the court committed no error in overruling appellant's plea that the surety on the curator's bond was released from liability, because the claim sought to be enforced against him was not exhibited nor presented during the course of administration of the estate of the principal on the bond.

If it were admitted for argument that the present cause of action is barred as a demand against the estate of W. H. Horner, the principal in the bond, under the statute of limitations in the administration act, *non constat* that it is barred thereby against the surety on the bond executed by the deceased curator. This exact point was before the supreme court of Arkansas. *Ashby v. Johnston*, 23 Ark. 163. That was a suit by two wards against the sureties of the deceased guardian, who interposed the defense that the claim was not presented "within two years after grant of letters." The judgment of the trial court sustaining a demurrer to this plea was affirmed in the supreme court, who stated the rule thus: "But it is well settled that where, from mere omission of the obligee to probate the claim in time, the cause of action is barred against the estate of the principal, in the hands of his executor or administrator, by the statute of non-claim, this of itself does not discharge the sureties in the bond."

To the same effect is *Chapin v. Livermore*, 13 Gray, 561; *Marshall v. Hudson*, 9 Yerg. 63; *Ordinary for use, etc., v. Smith*, 55 Ga. 15.

I am, however, satisfied that the cause of action alleged in the petition in this cause did not arise until the payments sued for had been made, to-wit, the date

of the final decree of the supreme court (February, 1891), vesting title in relator and annulling the deed of trust attacked in his suit. It was therefore not a demand against the estate of curator prior to that time. The statute of limitations only begins to run on the accrual of the cause of action, and no bar attached when suit was brought. *Tenny's Adm'r. v. Lasley's Adm'r.*, 80 Mo. 664.

The next assignment presents a question of new impression, namely, whether counsel fees and expenses of litigation, other than taxable costs, are recoverable in the present action on the curator's bond? I am of the opinion that they are not elements of recovery against a surety on a curator's bond in a suit thereon to enforce his liability under the stipulations and conditions of a bond framed (as the present one) according to the provision of section 5299, Revised Statutes, 1889.

This action is brought on the bond of appellant as surety for the compliance of the curator with its conditions. The liability of appellant is measured by the obligations imposed by the terms of the bond. The law does not permit a surety to be held on the default of his principal beyond the precise terms of the instrument of suretyship. The liability of a curator is to account for and pay over all the estate of his ward which either came into his possession as curator, or would have come into his possession by the exercise of ordinary care and diligence. In the case at bar the curator credited certain notes of his ward in payment of the purchase money of a lot of ground conveyed to the curator in his personal capacity. He then mortgaged the lot to secure his personal debt, and then executed a quitclaim of the lot to his ward, and at his next settlement as curator reported (erroneously) to the probate court that the lot had been purchased for

and conveyed to his ward. The ward ascertained (1887) after the death of his curator that the lot was incumbered for the curator's private debt. The ward was, therefore, entitled to two remedies: *First.* To refuse the quitclaim deed and enforce payment by the sureties of his curator of the guardianship funds invested by the curator in the purchase of the lot. *Second.* To accept the quitclaim deed, and to set up his title as the beneficiary of a resulting trust in the lot, by virtue of the purchase of the same with his money, against the creditors secured in the deed of trust made by Horner while he held the title individually on the ground of notice to them of relator's equitable title. *Robinson v. Robinson*, 22 Iowa, 428; *Phillips v. Overfield*, 100 Mo. 466, 473; Pomeroy on Equity Jurisprudence, secs. 422, 587, 1049; 9 American & English Encyclopædia of Law, 148, 149; *Evertson v. Evertson*, 5 Paige, 644; *Ferris v. Van Vechten*, 73 N. Y. 113; *Fogler v. Buck*, 66 Me. 205. The bond which the curator gave upon the assumption of his trust obligated himself and his sureties to "the faithful discharge of his duties." Revised Statutes, 1889, sec. 5299. Under this condition there would have been no liability on the part of the sureties for counsel fees and expenses of litigation, had the ward brought a direct action against them for the money invested by his curator in the purchase of the lot as aforesaid. That the ward declined this method of redress, and elected to establish a trust in the property bought by the misuse of his money by his curator, cannot in reason be held as enlarging the obligations assumed by the surety in signing a curator's bond containing the foregoing condition of liability. The scope of the condition is measured by its terms, and not by the election of remedies on the part of the obligee. The restriction of the obligations of the bond of a curator to the faithful

The State ex rel. Patterson v. Tittman.

discharge of his duties is the equivalent in law to a stipulation to perform the special duties (legally) charged upon him. There is no provision in the statute imposing the penalty of counsel fees and non-taxable costs on sureties for the defaults and misfeasances of guardians and curators. Such a rule has never been applied in actions on bonds of administrators nor public officers, although the conditions of such bonds are as broad, if not broader than those of guardians and curators. If the theory of respondent were sound, it would follow that under the condition in the bond sued upon respondent would have a right to demand that appellant, the surety in that bond, should employ counsel to conduct respondent's litigation against third persons to establish a resulting trust in property bought by his curator by converting the money of respondent. No such obligation is contained in the "condition" of the bond executed by the surety, nor is the bringing of such a suit the necessary result of the breach of the curator's bond. The direct result of the breach is to fasten liability on the curator and his sureties for the money (in this case $2,500), applied by the curator to his own use. The alternative result of that breach is to afford the ward an option to get the thing represented from anyone receiving it with notice in law that it was bought with the ward's money. I do not think that it is logical to hold that by adopting this second course the ward could impose a liability on the surety not mentioned nor contemplated in his bond or undertaking, and not recoverable in a direct suit thereon against him as bondsman.

In the case of *State to use, etc., v. Bishop*, 24 Md. 310, which was an action on the guardian's bond, the facts showed that the ward had received from third parties certain shares of stock belonging to him which his guardian had illegally transferred. The

court held that in the action by the ward for breach of the guardian's bond only nominal damages could be recovered.

In *Mann, Judge, etc., v. Everts*, 64 Wis. 372, the supreme court reversed a judgment of the trial court, permitting a recovery for counsel fees in a suit on an administrator's bond given for sale of the real estate, saying: "We do not think such counsel fees are covered by the obligation of the surety on this bond, therefore they should not be recovered."

In *Henry v. Davis*, 123 Mass. 345, the facts were that the bond sued on contained a condition, that defendant should abide the decision of arbitrators selected to establish a boundary line between his estate and that of plaintiff, and should execute plaintiff a quitclaim deed according to the award of the arbitrators. Defendant committed breach by refusing to carry out the award of the arbitrators by giving a quitclaim deed, and brought a bill in equity to set aside the award, which after a hearing was dismissed with costs. Thereupon plaintiff sued defendant upon said bond to recover the expenses incurred in the equity suit to set aside the award. The court held: "The plaintiff has been awarded his costs in that suit. The theory of the law is, that the taxable costs awarded to the prevailing party in a suit furnish a full indemnity to him for all his expenses incurred in the suit. Therefore a defendant who successfully defends a suit brought against him has no right of action or claim beyond the amount of the taxable costs against the plaintiff therein. It follows that the plaintiff in the case at bar has no claim against the defendant for the expenses he seeks to recover, which he can enforce either directly by a suit or indirectly as damages for a breach of his bond." To the same effect are *Oelrichs v. Spain* (15 Wall.), 82

U. S. 211, 220; Sedgwick on Damages [2 Ed.] sec. 680, 692; *State to use Roe v. Thomas*, 19 Mo. 613, 618.

There are exceptional cases in which counsel fees may be recovered in suits on contracts or bonds, although the general rule confines such recoveries to actions of tort. It has been held that they are embraced in injunction bonds, attachment bonds or any other contract made by a surety, broad enough *in its stipulations* to cover damages or loss incurred in the employment of counsel or discharge of the contract. But the distinct ground of these holdings is that the peculiar condition or stipulation of the bond or contract in question provides such *general or special indemnification of damages* as necessarily embraces counsel fees and non-taxable expenses.

The authorities relied upon by respondent belong to this class. In *N. H. & N. Co. v. Hayden*, 117 Mass. 433, the contract on which defendants were held liable for counsel fees was one that bound them to secure the plaintiff a right of way *free of charge*. Upon breach it was held that stipulation would cover counsel fees in securing the right of way. In *Dubois v. Hermance*, 56 N. Y. 673, a contract to *perform all the outstanding contracts* of plaintiffs was held to embrace counsel fees paid by plaintiffs in defending one of their contracts which defendants had failed to perform. In *Strong v. Ins. Co.*, 62 Mo. 289, the doctrine is stated that a second insurer is bound by the judgment of the assured against the first insurer, there being a contract of indemnity between the two insurers binding the second insurer to pay the first insurer a certain part of the loss. It was decided in that case that there is no privity between the assured and the second insurer, the liability of the latter being wholly to the first insurer. For this reason, and because that liability would become absolute in the event of a judgment after loss against the

first insurer, and because the second insurer had a right to control the defense to a suit against the first insurer, he was concluded by the judgment. That case is useful in defining the extent to which one not a party to the record may be concluded by the results of a litigation in which he has participated, or which he could have controlled; but it throws no light on the measure of a surety's liability on a bond containing the conditions set forth in this record.

I fail to see that analogy between the cases (containing the clauses of full indemnity or warranty) cited in the opinion of the majority of the court and the case at bar. Each of those seems to be clearly one of the class of contracts, in which the obligatory words by express terms or necessary implication warrant the recovery had. No case has been adduced where a recovery for counsel fees was had in a suit on a guardian's bond or any bond with *similar conditions*, and the contrary has been held in the cases cited *supra* in this opinion. I do not think the conditions of a bond should be strained against sureties; they are favorites in law, and have a right to stand upon the strict terms of their obligations when such terms are ascertained.

In the event of a suit upon an *implied promise* by the appellant to pay the counsel fees and expenses incurred by respondent after his election to sue for the lot rather than the money, the doctrine of *Strong v. Ins. Co.*, 62 Mo. 289, might be relevant under the facts herein tending to show appellant's connection with the litigation of respondent. As to the maintenance of such action I express no opinion. Unquestionably there can be no recovery in the *present action* on the *special* contract expressed in the bond, even if it were admitted that the evidence tended to show an implied agreement on the part of appellant to reimburse respondent for the litigation to establish his title to the

lot. A party cannot sue on one cause of action and recover on another. In *Haynes v. Town of Trenton*, 108 Mo. 123, 130, it was said: "The purpose of a petition is to advise the court and the adversary party of plaintiff's claim. This court has always given a liberal construction to pleadings under the code, but it has sternly set its face against the attempt to sue on one cause of action and recover on another." *Warson v. McElroy*, 33 Mo. App. 553; *Eyerman v. Cemetery Ass'n*, 61 Mo. 489.

For the error of the circuit court in giving the instruction authorizing a recovery in this action for counsel fees and non-taxable expenses, I think the judgment herein should be reversed and judgment entered for nominal damages.

## ON MOTION FOR REHEARING.

BOND, J.—Appellant cites the case of *Haeussler v. Laclede Bank*, 23 Mo. App. 282, as a controlling decision of this court entitling him to a rehearing of this cause. I do not concur with my associates in refusing the rehearing prayed for by appellant, and I deem their opinion on the hearing of this cause contrary to the rule expressed in the opinion of this court in *Haeussler v. Laclede Bank, supra*.

The clerk of this court is hereby ordered to certify and transfer the original papers on file in this cause, and a full and complete transcript of the proceedings of this court therein, to the supreme court to be there reheard and determined as provided in section 6 of the amendment of article 6 of the constitution of Missouri.

Judge BIGGS concurs in the order certifying the case. Judge ROMBAUER is absent.