STATE ex rel. J. E. MOUNT, Etc., Respondent. v. JAMES H. F. SMITH et al., Appellants.

**St. Louis Court of Appeals, June 8, 1909.**

1. **GUARDIAN AND WARD: Expense of Litigation: Trust Funds: Conversion.**  Where the curator of an infant's estate has misappropriated the trust funds, whereby the infant is put to the expense of litigation to recover the same, the curator is liable on his bond for the expense so incurred.

2. ———: ———: ———: **Hostile Claim to Real Estate.** Where the curator of an infant's estate married the infant's mother, and after her death attempted to hold her real estate against the infant, whereby the infant was put to the expense of litigation to establish his title to said land, he is not liable on his bond to the infant for the expense so incurred; such property was not protected by the curator's bond.

3. ———: ———: ———: **Removal.** Where an infant incurred expense in a suit to remove his curator on the ground that his interest in certain land was hostile to the infant, which suit was decided in his favor, such expense was not incurred by reason of any breach of trust on the part of the curator and the infant could not recover in a suit on the curator's bond.

4. ———: ———: ———: **Evidence.** Where the curator of a minor bought a tract of land paying for the same, partly with his own money, partly with the funds, misappropriated, of the minor and partly with the money furnished by the minor's mother.  After the mother's death the minor brought a partition suit and therein was adjudged an interest in the land proportionate to the amount of his own money which the curator had misappropriated, and the amount furnished by his mother.  *Held*, in an action by the minor against his curator on the latter's bond for the expense incurred in such litigation, that an allowance to the minor's guardian *ad litem* in the partition proceeding could not be recovered, in the absence of a

showing as to what part of such expense was incurred by the curator's resistance of the minor's claim to the interest arising from his misappropriated money and what part arose from the curator's claim of the interest derived from the minor's mother, and in the absence of evidence showing that the allowance was reasonable; *held*, further that an attorney's fee allowed in the partition suit could not be recovered for the same reason.

Appeal from the Scotland Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED AND REMANDED.

*O. D. Jones* and *E. R. Bartlett* for appellant.

*Smoot & Smoot* for respondent.

GOODE, J.—On December 3, 1901, James F. Smith, was appointed curator of the estate of Irvin Padgett by the probate court of Scotland county and duly qualified, executing a bond for $5,000 with W. H. F. Smith and J. E. Smith as sureties. The condition of the bond was that said James F. Smith should faithfully perform and discharge his duties as curator according to law. On December 10, 1903, said James F. Smith was removed from the curatorship by the probate court of Scotland county and from the order of removal he appealed to the circuit court of said county, where the order was affirmed, and thence he appealed to this court where the appeal was dismissed. Thereupon he sued out a writ of error, and on the hearing of said writ, the judgment of the circuit court ordering the removal was affirmed. Shortly after Smith was appointed curator and while the minor was about three years old, said Smith and the mother of Padgett, whom Smith had married after the death of her first husband, purchased a tract of land in Scotland county and took the deed in their joint names—in the names of James F. Smith and Sadie E. Smith. The price of this land was upwards of four thousand dollars and was paid as

follows: $1,275 was advanced by Mrs. Smith, formerly
Mrs. Padgett, $1,400 belonging to the minor child and
in the hands of Smith as curator, was used by the latter
in payment, and the balance, $1,450, was paid out of
Smith's own funds. Subsequently Mrs. Smith, formerly
Mrs. Padgett, died, and Smith claimed to own the en-
tire tract of land on the theory that the joint deed
to himself and wife created an estate by entirety and
as survivor he took the whole title. This claim led to
litigation between Smith and the minor which was con-
ducted for the latter by one Mills as guardian *ad litem.*
The suit was for an equitable partition and resulted
in a decree finding the facts as above stated, and that
Irvin Padgett was entitled to 107-165ths of the land.
This division of interests shows the court found Irvin
Padgett was entitled to such proportion of the whole,
as the $1,275 paid by his mother, plus the $1,400 of his
own paid by Smith out of the funds in his hands as
curator of said Irvin, or $2,675 in all, bore to the entire
purchase price of $4,125 paid for the land. Appellant
Smith was decreed 58-165ths, he having paid $1,450 of
his own money. The sum of $2,675 is 107-165ths of
$4,125, and $1,450 is 58-165ths of it. Smith was allowed
credit in his final settlement as curator in the probate
court for the $1,400 of his ward's money put into the
land recovered by the ward. In the partition suit he
was charged in the judgment with $325 as the minor's
share of the rents he had collected, which sum was made
a lien on the land. It was adjudged also an attorney's
fee of $350 be allowed counsel in the case and all costs
be taxed against the defendant. This judgment was
rendered in Schuyler county, and an appeal was taken
to the Supreme Court, the case being reported in 205
Mo. 122, and affirmed for failure to get the appeal before
the court in such form it could be determined on the
merits. The present action has relation, in part, to the
two proceedings we have recited, to-wit, the partition
suit of Irvin Padgett against Smith and the proceeding

to remove Smith from the curatorship. The first count of the petition in the present case, which is an action against Smith and his sureties on his bond as curator, after reciting the matters in connection with the purchase of the land in Scotland county, the litigation it gave rise to and the result, alleges the minor was compelled to institute and carry on the litigation to its final termination in the Supreme Court during the April term, 1907. The next paragraph states the proceeding for the removal of said Smith from the curatorship on the ground that his interest was hostile to his ward's, the various appeals and the writ of error sued out therein and the expense thus entailed on the ward, and the final result. The third paragraph alleges Smith, while acting as curator, received all the household goods and effects of Irvin Padgett's father, of the value of $500. The fourth paragraph avers that while Smith was in possession of Irvin Padgett's interest in the lands which were the subject of the partition suit, he, Smith, cut fifty-eight telephone poles of the value of $58 from the land. For breach of the bond it is alleged Smith had violated its terms and conditions in the following manner:

"That he made claims to the property of said ward, and compelled said ward to expend large sums of money in and about the procurement of his estate and the removal of said curator; that said minor was compelled to expend the sum of six hundred ($600) dollars as attorneys' fees to secure his interest in said land and to remove said curator, and one hundred and fifty ($150) dollars for briefs and expenses of attorneys in attending the Supreme Court and the Court of Appeals, for all of which said defendant, James F. Smith, is liable on his bond; and for the further breach of his said bond said relator says, that said curator took and appropriated all of the personal effects belonging to A. P. Padgett to his own use, same being the property of said minor, Irvin F. Padgett, he being the only child and heir of

A. P. Padgett. Relator further avers that the timber so cut off said minor's land and appropriated by the defendant Smith, was of the value of fifty-eight ($58) dollars.

"Relator therefore prays judgment that said bond be forfeited and that he have and recover damages in the sum of twelve hundred and fifty ($1,250) dollars, and for costs of suit."

Many of the averments of the petition are admitted in Smith's answer. It is admitted Mount is the present curator; that Smith was the former curator and executed the bond in suit; that at the time he qualified as curator, or soon after, he and his wife Sadie Smith (formerly Sadie Padgett) bought 165 acres of land, and of the purchase money his wife paid $1,275 and Smith paid $1,400 of the price out of the money of the minor Irvin Padgett; that said Mrs. Smith died in April, 1902, intestate, leaving said Irvin Padgett as her only heir; that Smith took possession of the land and claimed the entire title after the death of his wife; the various proceedings in the partition suit and their result are also admitted, and followed by the averment an attorney's fee of $325 was adjudged therein, of which Smith was compelled to pay a proportional share, as well as the costs. Wherefore Smith denies he and his sureties are liable on the bond to plaintiff for an attorney's fee on account of said suit. The answer next admits the proceeding to remove Smith from the curatorship and its result; says after the order of removal was finally approved, he made settlement with the probate court and said court charged him with all sums due from him to his ward, which sums he paid. That judgment is pleaded in bar of the claim for the household goods and telephone poles, and the judgment of the circuit court of Schuyler county in the partition suit is pleaded as a former adjudication of all matters and things relating to the partition suit, and in bar of the claim in the present action for attorney's fees and other expenses

arising out of said suit. Every other allegation of the petition is denied. The sureties filed an answer which admitted signing the bond and denied the other allegations of the petition. It is conceded the effect of the court's instructions was to withdraw from the consideration of the jury the two claims on account of telephone poles cut from the land and household goods belonging to the estate of the father of Irvin Padgett, and alleged to have been received by Smith. This left for determination the demand for an attorney's fee and expenses paid by Irvin Padgett in the partition suit, and the like items of expense incurred by him in the proceeding to remove Smith from the curatorship. Mills, guardian in the partition suit, was allowed $400 for services in prosecuting it, which sum was paid by Mount as curator of Irvin Padgett. An exception was reserved to the record admitted in proof of said allowance. The payment was proved of other items like printing briefs and expenses of an attorney in attending the Supreme Court, and the payment of an attorney's fee of $150 and incidental expenses in the proceeding to remove Smith as curator. The jury's verdict was for $500 in respondent's favor.

1. Counsel for appellants say no cause of action on Smith's bond as curator, grew out of any of the alleged transactions; but their position cannot be maintained in view of the decision of the Supreme Court and of this court in State ex rel. Patterson v. Tittman, 134 Mo. 162, s. c., 54 Mo. App. 490. Said case was an action on the bond of William H. Horner, as curator of the estate of Charles L. Patterson, relator, and the facts were these: among the assets belonging to the ward in Horner's hands as curator, were two promissory notes secured by deeds of trust. He was authorized by the probate court to bid in, for the benefit of the ward, the property secured by the deeds of trust, at a foreclosure sale under said deeds and did so; but took the title in his own name. Subsequently he borrowed for

himself $2,500 from the State Savings Association and secured it by a deed of trust on the property. Still later he conveyed the property to his ward without mentioning the deed of trust he had given to secure his own debt. Horner died while curator. Eugene C. Tittman was appointed administrator of his estate and as such submitted a final settlement of the affairs of the curatorship. At the time of this settlement, neither Tittman nor the ward knew of the deed of trust Horner had executed. Lancaster, the trustee in that deed, advertised the land for sale and the ward, on learning of the incumbrance from the advertisement, filed a suit in equity to enjoin the sale, cancel the deed of trust and set aside the final settlement. The relief asked was accorded him in the circuit court and the decree affirmed by the Supreme Court. Patterson v. Booth, 103 Mo. 402. The ward Patterson gave Tittman, as administrator of Horner's estate, notice of the suit instituted to cancel the Horner deed of trust and asked the administrator to conduct the suit; but the burden of the work was left to the attorney for relator, who, in prosecuting it, paid counsel fees and other expenses amounting to more than six hundred dollars. To recover his disbursements the relator instituted on Horner's bond as curator, the case of State ex rel. Patterson v. Tittman, alleging a breach of the condition of the bond, in that the curator had impaired the title to the trust property by attempting to charge it with the payment of his individual debts, and the sureties on the bond were answerable for counsel fees and necessary costs incurred in getting rid of the deed, on the theory that those expenses flowed directly from the breach. Both this court and the Supreme Court upheld the contention of the ward, and said the suit to cancel the deed became necessary in consequence of the curator's breach of trust, and the expense of prosecuting it was a proximate result of the breach for which the sureties must respond. Smith diverted a trust fund when he invested $1,400

belonging to his ward Irvin Padgett in land and took title in his own name. Said act as flagrantly violated the duty of a curator, as did Horner's execution of a deed of trust on his ward's land to secure his own debt. The misappropriation of the trust fund by Smith breached the condition of the bond he had given for the faithful discharge of his duties as curator according to law—the same condition the Horner bond contained. Not only did Smith divert the money in his hands as curator by taking the title to the land in his own name, but according to the decree of the court and an admission in his answer in the present case, he attempted to hold the interest thus acquired against the ward; thereby throwing on the latter items of expense in the partition suit which otherwise would not have been incurred. Whatever expense the estate of relator was forced to meet in recovering the interest in the land Smith had acquired with Padgett's $1,400, is a liability against the latter and his sureties. But the interest inherited by Irvin Padgett from his mother, which interest was such proportion of the land as the sum of $1,275 advanced by her bore to the entire price of $4,125, stands on another footing. Said money never came into Smith's hands as curator, but was paid by Mrs. Smith herself. It is true Smith endeavored to hold her interest, after her death, against Padgett, as well as to hold the interest acquired with the latter's money; but the mother's part was not protected by the curator's bond. Padgett's suit for it was like any litigation between rival claimants of a title. Smith's claim of title was not a breach of his bond as curator, and whatever expense he put Padgett to, is not a liability of his sureties.

2. Respondent was allowed to recover attorney's fees and other expenses incurred in removing Smith from the curatorship. The removal was on the ground that his interest had become opposed to the ward's. This item does not fall within the principle of State ex rel.

v. Tittman, supra, or any authority of which we know. Smith's defense in the proceeding to remove him was not a breach of the condition of his bond; which was, as said, for the faithful discharge of his duties as curator according to law. That was an obligation to perform rightly his duties while he was curator, and did not require him to submit to removal ·without opposition, on pain of laying the obligors in the instrument liable for expenses incurred in a proceeding to remove him; though he might be taxed with the costs of the proceeding. Error was committed in allowing recovery for this item.

3. The circuit court of Schuyler county allowed John C. Mills, the guardian *ad litem* of Padgett in the partition suit between Padgett and Smith, $400 for the management and conduct of the case in the Schuyler court and in the Supreme Court, directing said sum to be paid out of the funds in the hands of said guardian and the balance to be transferred to Mount, the present curator. This order was made after affirmance of the judgment of the circuit court. It was admitted in evidence in the present action as proof of the expense Smith had put Padgett's estate to in said cause. Objection was made to its reception on the ground the Schuyler court was without jurisdiction of the partition suit, a matter not presented in the present record so as to be determined, and also because it was incompetent against these appellants; the sureties not being parties to said suit and Smith having had no notice of the motion for allowance. The record should have been excluded. It was not shown as against appellants, the amount allowed was reasonable or covered expenses compelled solely by Smith's attempt to hold the interest in the land bought with his ward's money. It may have embraced, and apparently did, expenses incurred in contending for Padgett's interest inherited from his mother. In truth it was improper evidence on the issue. Respondent had the right to show what attorney's fees and other expenses had been paid in consequence of Smith's

breach of trust, and that they were reasonable; but said record did not do this.

4. Appellants contend because the court in the partition suit allowed more than three hundred dollars as an attorney's fee, which was paid by Padgett and Smith, according to their respective interests in the land, respondent is precluded from recovering attorney's fees in this action. So far as appears the fee allowed in the partition suit, was for the services of attorneys rendered in bringing and conducting said suit as one to divide the land; and not for services rendered Padgett by attorneys in the contest with Smith for the interest in the land Padgett was entitled to in consequence of Smith's having put $1400 of the former's money into it.

5. Appellants' counsel also say the court erred in refusing to let them prove Smith made the investment of his ward's money at the solicitation of the latter's mother. This evidence was immaterial, because the investment was none the less a breach of trust if made at the mother's request.

The judgment is reversed and the cause remanded. All concur.